COLONIAL BAKING CO. et al. v. ACQUINO, and three other cases.—103 S. W. (2d) 613.

Western Section.    October 16, 1936.

Petition for Certiorari denied by Supreme Court, March 27, 1937.

Nelson & Rhem, of Memphis, for plaintiffs in error.

Lowell W. Taylor and Hearn W. Tidwell, Jr., both of Memphis, for defendants in error.

SENTER, J. The parties will be referred to as in the court below. The respective defendants in error were the respective plaintiffs below, and the plaintiffs in error in the respective cases were the defendants below in the respective cases.

The respective plaintiffs sued the Colonial Baking Campany and L. M. Meeks for damages resulting from an automobile accident on highway No. 51 in Shelby county, Tenn., on July 3, 1935.

There was a verdict for the plaintiff, Mrs. Rozella Acquino, in the sum of $20,000; and a verdict in favor of Richard Acquino, who sued by next friend, in the sum of $15,000; and a verdict in favor of Dan P. Acquino, in the sum of $10,000; and a verdict in favor of Phillip Acquino in the sum of $500.

A motion for a new trial was made in the respective cases, and the trial judge suggested remittiturs as follows: In the case of Mrs. Rozello Acquino, $5,000; in the case of Richard Acquino, $5,000; in the case of Dan P. Acquino, $2,500. No remittitur was suggested in the case of Phillip Acquino. Upon the acceptance of the respective remittiturs in the respective cases mentioned, the trial judge overruled the motions in the respective cases for a new trial and rendered judgments accordingly.

From the action of the court in overruling motions for a new trial in each of the cases, the defendants below have appealed in error to this court. The respective plaintiffs, who accepted the remittiturs, have also assigned error to the action of the trial judge in requiring

the remittiturs as a condition precedent to overruling the motion for a new trial in the respective cases in which remittiturs were suggested.

We will first consider and dispose of the assignments of error of the defendants below. By the first assignment of error it is urged that there is no material evidence to support the respective verdicts of the jury, and by the third assignment which is directed to the action of the court in refusing defendants' motion for a directed verdict in their favor made at the close of all the proof.

It appears that all the plaintiffs except Mr. Dan P. Acquino, who sued for loss of services and expenses, were riding in an automobile traveling north on the concrete highway known as the Jefferson Davis Highway, en route from Memphis, Tenn., to their home in Hickman, Ky. The accident occurred about 5 o'clock on the afternoon of July 3, 1935. The automobile in which they were riding was being driven at the time by Mrs. Rozella Acquino. The concrete surface of the highway was eighteen feet wide with dirt shoulders on each side. The automobile in which they were riding collided with a truck owned by the defendant, Colonial Baking Company, and being driven and operated by the defendant, Meeks, who was in the employ of the Colonial Baking Company, and at the time of the collision was driving the truck in the business of the Colonial Baking Company.

The theory of plaintiffs below was that the automobile driven by Mrs. Acquino was proceeding north on the right-hand side of the highway; that a black line was painted down the center of the highway; that she reached the crest of a hill, and as she did so, she saw for the first time the truck approaching from the north driving south, and that the truck was then but a short distance from her, and traveling on the same side of the highway on which she was traveling; that the truck was across and on the east side of the center of the highway; that it was running at a rapid rate of speed; that when Mrs. Acquino reached the crest or top of the hill and observed the truck approaching rapidly from the north on her side of the road, that in an effort to avoid the collision she turned her automobile slightly to the left, there being a ditch on the east side of the road, and that the driver of the truck ran the truck into and against the automobile.

It appears that the collision occurred at a point about a hundred and twenty-five feet north of the crest of the hill. There is evidence in the record to the effect that the truck was being driven at thirty-five or forty miles per hour and that the automobile was being driven at about the same rate of speed.

According to the theory and testimony of Mrs. Rozella Acquino, she did not attempt to turn her automobile to the left until she saw that the truck was going to run into the automobile if she continued

on her right side of the road; that the two vehicles were so close together that she did not have time to do more than to seek to avoid the collision by starting to turn her car to the left so that the truck could pass on her right, but that the collision resulted notwithstanding her effort to avoid it.

Numerous witnesses were introduced by the respective parties, including Meeks, the driver of the truck. He testified that he was on his proper side of the road; that he was not driving the truck at an excessive rate of speed and that the collision was the result of the negligent driving of the automobile by Mrs. Acquino.

There was a sharp conflict in the evidence. The jury accepted the testimony of the witnesses for plaintiffs. It is too well settled to require the citation of authority that if there is material evidence to support the verdict of the jury, concurred in by the trial judge, the verdict will not be disturbed on appeal.

We find that there is material evidence to support the finding of the jury that the defendant, Meeks, the driver of the truck, was guilty of proximate negligence. We are further of the opinion that the question of contributory negligence of the driver of the automobile was submitted to the jury under proper instructions, and that there was conflict in the evidence with reference to the actions and conduct of the driver of the automobile just preceding and at the time of the collision. It results that the first and third assignments of error are overruled.

By certain of the assignments of error the question is presented that the trial judge while charging the jury read from the declaration of the plaintiffs.

We have examined the charge of the court and we do not find that it affirmatively appears from the charge of the court or the bill of exceptions that the trial judge read the declaration or pleas to the jury. The trial judge did state in the course of the charge the contentions made by the plaintiffs and the special acts of negligence relied upon.

In support of the assignments of error presenting this question, appellants cite and rely upon East Tennessee, V. & G. R. Co. v. Lee, 90 Tenn., 570, 572, 18 S. W., 268, 269; Nashville, etc., R. R. v. Anderson, 134 Tenn., 666, 681, 185 S. W., 677, 680, L. R. A. 1918C, 1115, Ann. Cas. 1917D, 902; Louisville & N. R. R. Co. v. Satterwhite, 112 Tenn., 185, 205, 79 S. W., 106; James Co. v. Continental Bank, 105 Tenn., 1, 3, 58 S. W., 261, 51 L. R. A., 255, 80 Am. St. Rep., 857; O'Rourke v. Street R. Co., 103 Tenn., 124, 52 S. W., 872, 46 L. R. A., 614, 76 Am. St. Rep., 639; Sullivan v. Tigert, 1 Tenn. App., 262, 268, and other cases.

In East Tennessee, V. & G. R. Co. v. Lee, the trial judge in his charge to the jury stated:

"These wrongs and injuries are set out in plaintiffs' declaration,

which you will have out with you, and which you will read. In the defendant's plea, which you will have out with you, and which you will read, these wrongs and injuries are denied, and the recovery resisted. These pleadings form the issue which you ought to remember you were sworn to well and truly try, and a true verdict render upon the law and evidence.''

In that case on appeal, the Supreme Court stated:

''It was the duty of the court to specifically state to the jury what issues were raised by the pleadings, not to refer them to the pleadings to ascertain for themselves what the issues were. The construction of the pleadings and the issues raised thereby are questions for the court alone to determine, and not for the jury. In this action of the court there was error.''

It will thus be seen that in that case the trial judge did not read the declaration to the jury, and did not state the issues presented by the pleadings, but referred the jury to the declaration and the pleas, and left the jury to discover from the pleadings the issues being tried without instructions from the court. Of course, that case is not, in any sense, analogous to the present case.

In the case of Nashville, etc., R. R. v. Anderson, the court disapproved the action of the trial judge in the course of his charge to the jury, reading from the declaration and the pleas. The court stated:

''The Court of Civil Appeals thought the case should be reversed on account of the manner in which the trial judge delivered his charge. Instead of stating the issues of fact to the jury, the circuit judge read a portion of the declaration of the plaintiff below, and directed the jury to find in favor of the plaintiff if the greater weight of the evidence was on that side on any one or more of the five counts. This was error. Certain of the averments of negligence were not supported by the proof. In fact, no proof was offered as to some of the matters charged, particularly on the question of defective brakes; yet the circuit judge submitted this question to the jury along with others. This, of course, was improper, and, moreover, it is not desirable for the trial judge to read the pleadings to the jury, but rather to give them a succinct statement of the issues with proper instructions as to the law.''

As above stated, we do not find anything in the record which affirmatively shows that the trial judge read portions of the declaration or the pleas to the jury. He did state to the jury the matters of negligence complained of in the declarations and also the defensive pleas by the defendants. The trial judge charged the jury fully on these matters, and so far as we have been able to find from the record, the trial judge did not submit any issue to the jury upon which no evidence had been offered. There was some evidence offered to support each of the matters of negligence complained of

and mentioned by the trial judge to the jury in his charge. If there was any evidence tending to prove the acts of negligence complained of, it was the clear duty of the trial judge to submit the question to the jury.

We have carefully examined the general charge, and we do not find that it is subject to the criticism made by the respective assignments of error presenting this question. There are numerous cases holding that it is error for the trial judge to submit an issue to the jury where there is no evidence offered to support the issue. Clearly, where the declaration is in more than one count, and evidence is offered in support of but one count, it would be error for the trial judge to submit the other counts, not supported by any evidence, to the jury. In that case it would be the duty of the trial judge to direct the jury that a recovery could not be had under the counts where no evidence had been introduced to support the counts, and he should then submit only the counts where there was some evidence offered in support.

If the declaration is in one count, and numerous acts of negligence are averred in the declaration, and there is evidence to support some of the acts of negligence averred, and no evidence offered in support of other acts of negligence averred, the trial judge should limit his instructions to the jury to the particular acts of negligence supported by some evidence. Louisville & N. R. R. Co. v. Satterwhite, supra; James Co. v. Continental Bank, supra; Sullivan v. Tigert, supra; Russell v. Farrell, 102 Tenn., 248, 52 S. W., 146; Citizens' Insurance Co. v. Ayers, 88 Tenn., 728, 734, 13 S. W., 1090.

It results that assignments of error Nos. 4, 5, 6, 7, 14, and 15, are overruled.

The second assignment complains of the action of the court in refusing to give in charge the special request No. 6 tendered by the defendants. This special request is as follows:

"The Court instructs you that the mere fact that the bread truck of the defendant was being driven, if you so find, on the easterly or left side of said highway prior to the time and before the car of the plaintiff appeared on said highway to the driver of said bread truck, is not of itself any evidence of negligence upon the part of the defendants herein."

We think this special request was properly refused. The request does not take into consideration the circumstances and physical conditions of the road at the point of the collision. There was a sharp incline or hill, the crest of which was near the point of collision. The truck was traveling south, and if the truck was on the left side of the road a short distance before it reached the crest of the hill which he was about to descend, certainly it cannot be said that it was not negligence for the driver of the truck to be driving the truck at the rate of speed of thirty-five or forty miles

per hour on his wrong side of the road, and especially where the hill would obstruct his view so that he could not see a vehicle approaching from the south. This assignment is overruled.

■ The eighth assignment is also directed to the action of the court in refusing to give in charge special request No. 8, which is as follows:

"The court instructs you that there is no evidence in this case that the bread truck of the defendant was being operated at such a speed as to endanger the lives or property of others, or at such a speed as to be negligent, and that issue is withdrawn from your consideration."

We think this request was also properly refused. There was some evidence in the record to the effect that the truck was being driven at a rate of thirty-five or forty miles per hour as it approached the crest of this hill, and a jury could well find that to drive a truck at that rate of speed on the wrong side of the road as it approached the crest of a hill obstructing the view of the driver of the truck and also obstructing the view of the driver of the automobile, that such conduct constituted negligence and that such negligence was the proximate cause of the collision.

■ The ninth assignment is with respect to the refusal of the trial judge to grant special request No. 12, tendered by the defendants, which is as follows:

"The court instructs you that there is no evidence in this case that at the time of the collision the truck of the defendant was being driven on the left-hand side of the highway at an excessive rate of speed, and that issue is withdrawn from your consideration."

We think this request was also properly refused since it was a question for the jury to say under all the facts and circumstances whether the truck was being driven at an excessive rate of speed, considering the location and physical condition of the highway if the truck was on the left-hand side of the road just before it reached the crest of this hill where the collision occurred.

The tenth assignment is directed to the action of the court in refusing special request No. 13, and it is likewise overruled for the reasons above stated in disposing of assignment No. 9, since the special request No. 13 is practically the same in substance as special request No. 9.

■ The eleventh and twelfth assignments are also directed to the action of the court in refusing to grant special requests as follows:

"No. 10: You are instructed that there is no evidence that the driver of the defendant's bread truck negligently failed to sound a horn or warning at or immediately before the accident in question, and that issue is withdrawn from your consideration."

"No. 14: The court instructs you that there is no evidence in this case that the defendant was negligent in not blowing his horn

on said bread truck or giving some signal upon approaching the crest of the hill described in evidence, and that issue is withdrawn from your consideration.''

These requests, we think, were properly refused. If the defendant, Meeks, was driving the truck on his left side of the road as it approached the crest of this hill, where his view was obstructed because of the hill, if he intended to stay on that side of the road, we cannot say that a failure to give some warning of his approach was not negligence. This question was one for the jury under all the facts and circumstances.

The thirteenth assignment is based upon the refusal of the trial judge to grant the special request No. 16 as follows:

''The Court instructs you that there is no evidence that the defendant Meeks, at the time and place described in evidence, failed to do everything any ordinarily prudent man would have done to have avoided the collision as described in evidence after the danger of the collision with the plaintiff's automobile became apparent, and that issue is withdrawn from your consideration.''

This special request was also properly refused for several reasons. If the defendant brought about the situation resulting in the collision by driving his automobile on the wrong side of the road approaching the crest of this hill and that this was the proximate cause of the collision, and, if, as a fact, he did nothing to prevent the collision, or failed to do anything to prevent a collision, he would have been liable. The trial judge fully instructed the jury on this subject, and properly left the question to the jury.

The fifteenth assignment challenges the correctness of the following portion of the general charge to the jury:

''Now, gentlemen of the jury, it is the theory of the plaintiff, Mrs. Rozella Acquino . . . and she got to the top of that rise, she saw the truck of the defendant, Colonial Baking Company, on the east side of the highway, proceeding south, and that being confronted with the truck in that situation she endeavored, in the exercise of good judgment, but could not turn to the right onto the shoulder of the road, but did turn to the left in an effort to avoid that on-coming truck, which at that time under the plaintiff's theory, was being driven at a fast rate of speed, about 40 or 45 miles an hour.''

The criticism of the above portion of the general charge is that it did not explain to the jury the doctrine of sudden emergency. We do not see where appellants have cause to complain because the trial judge did not instruct the jury on the doctrine or rule of sudden emergency. It would have been to the advantage, and not the disadvantage, of plaintiff to have had the doctrine of sudden emergency explained, and, certainly, the defendants were not prejudiced be-

cause there was not a definition of the doctrine of sudden emergency given to the jury. This assignment is accordingly overruled.

The charge of the court should be read and considered in its entirety and not certain excerpts taken from the charge where other portions of the charge make plain the meaning of the court. We have read the charge of the court carefully and do not find that it is subject to the criticism made. We think that it fairly stated the theories of the respective parties and the rights and duties of the respective parties and the law applicable thereto. The charge was full, complete, and fairly presented the issues to be decided by the jury. This disposes of all assignments of error directed to the general charge.

Assignments 17, 18, and 19 are also overruled, for the reasons stated in disposing of other assignments based on the refusal of the court to grant the special requests therein discussed.

The twenty-second, twenty-third, and twenty-fourth assignments are each based upon the refusal of the trial judge to grant the motion of the defendants for a mistrial made during the course of the examination and cross-examination of Mrs. Rozella Acquino, because of her alleged display of unusual emotionalism while she was testifying. Under these assignments the contention is made that because Mrs. Acquino, while testifying, gave way to her emotions and shed tears, that the jury was swayed by passion and prejudice against the defendant.

During the course of her examination all of the minute details of the tragic collision were brought fresh to her mind. It was a horrible accident, and in which two of the occupants of the automobile with her were killed, and she was terribly injured, and rendered highly nervous. She did give way to her emotions at times, and no doubt evinced considerable nervousness, possibly bordering on hysteria. She would calm herself and proceed with her testimony for a time and would again become unable to control her emotions.

There was nothing in her manner so far as the record discloses that indicated that she was seeking to unfairly play upon the passions and prejudices of the jury. We, of course, do not have before us her exact manner or her nervousness, but it does appear that she did break down and cry, but this was no doubt due to her extreme nervousness, or as a result of the very serious injuries which she sustained.

We think it was not error for the trial judge to deny the motion for a mistrial on account of her aroused emotions and nervousness while testifying.

By the twenty-first assignment the question of the alleged misconduct of the jury in considering whether or not the defendants had insurance is made. On the motion for a new trial the alleged misconduct of the jury was made a ground. In support of the mo-

tion for a new trial the affidavits of two members of the jury were presented.

V. M. Blaydes, one of the jury stated in his affidavit:

"The question of insurance was discussed in the jury room while we were arriving at a verdict but I do not recall exactly what was said. In arriving at and agreeing to the verdict I considered the fact that the Colonial Baking Company had insurance on its truck that was in the accident that would protect it. If I had not considered the fact that they, the Colonial Baking Company, has insurance, I would not have agreed to the verdicts that were returned."

Another member of the jury, A. M. Cartwright, stated in his affidavit as follows:

"I, the undersiged, served on the jury in the trial of the cases of the Acquinos versus the Colonial Baking Company that returned a jury verdict of $45,000.00. Had I not considered the fact that Colonial Bread Company had liability insurance on its truck that was in the accident, I would not have agreed to return the verdict that we did."

It is to be noted that Cartwright did not claim that there was any discussion of insurance in the jury room by the jury in arriving at the verdict. He did state that had he not considered that Colonial Bread Company had liability insurance that he would not have agreed to return the verdicts that he did.

We think it well settled in this state that jurors will not be permitted to impeach their verdicts and to stultify themselves. This Court stated in Harbin v. Elam, 1 Tenn. App., 496, 501:

"Jurors will not be permitted to impeach their verdict and to stultify themselves, as was attempted by two jurors in the instant case. Said jurors had sworn that they would try the case fairly, impartially, and on the evidence as introduced. Yet, when examined as witnesses, they say, in substance, that they did not do that; that they sought to give a verdict against an insurance company that was not a party to the law suit, and the name of which they did not know."

To the same effect is the holding in Johnson, Adm'r, & Faucette v. Maury County Trust Co., 15 Tenn. App., 326, 338.

These jurors not only attempted to impeach their verdict, but also to stultify themselves by a statement to the effect that they agreed to the verdict only because they though there was insurance protection by the defendant, Colonial Baking Company. This, they will not be permitted to do.

However, the foreman of the jury and seven other members of the jury made affidavits that no question of indemnity insurance was mentioned during the progress of the deliberation of the jury. The foreman of the jury in his affidavit stated as follows:

"I, V. Alexander, make oath that I was one of the jurors in the

above case and in the cases which were tried jointly with it. I served as foreman of that jury.

"The question of automobile liability insurance was not discussed by any of the jurors while deliberating on our verdict and no consideration of whether the defendants Colonial Baking Company or L. M. Meeks did or did not have automobile liability insurance entered into our verdicts, either as to liability or the amounts awarded.

"When we entered the jury room to consider the cases, we sat around a table in such a manner that all could hear each as he talked. I told the other jurors that the first question we had to settle was whether the Colonial Baking Company's driver was negligent, and invited each to express his views. Each juror, with the exception of a juror by the name of A. F. Taylor, stated that he thought that the accident occurred because the defendant Meeks was on the wrong side of the road and that he was negligent. Mr. A. F. Taylor stated that he was a truck driver and that truck drivers didn't drive that way, but when he took a vote on whether the accident was due to the negligence of the defendant L. M. Meeks, all jurors voted in favor of the plaintiffs. I then told the other jurors that our next question to consider was whether Mrs. Acquino was negligent. It was unanimously agreed that she was not guilty of any negligence. We then proceeded to take up the cases separately and discuss the amount which we would award in each. The jurors expressed their views as to amounts and some were higher than others. At no time during our discussion did anyone mention the question of automobile liability insurance. One of the jurors, Mr. A. M. Cartwright, made some observation as to how much life insurance a certain specified sum of money would buy but I promptly told him that we could not consider things of that character in arriving at our verdict. I have attended law school for three years and was familiar with the rule that it would be improper for the jury to discuss or consider the question of liability insurance or any other matter that had not been brought out in the evidence and during our entire discussion I was alert to see that nothing improper entered into the consideration of the cases.

"The amounts of the verdicts were not fixed until each juror had expressed his satisfaction and approval with the amounts."

Seven other members of the jury signed a joint affidavit in which they stated:

"We, the undersigned, make oath that we served as jurors in the above case and in the cases tried with it and we each make oath that the questions of whether the defendants had liability insurance on their truck was not discussed or considered in arriving at our verdicts. We have read the foregoing affidavit of V. Alexander and make oath that the facts stated therein as to what went on in the jury room are true."

Certainly it cannot be said that the one juror who gave the affidavit, and by his own admission and statement contained in the affidavit thereto was attempting to impeach his own verdict and to stultify himself by stating that he would not have rendered the verdict except that he thought that there was insurance protecting the defendants, will be given credence at the expense of discrediting the eight other jurors, including the foreman of the jury. This assignment of error is not sustained, and is accordingly overruled.

Another assignment of error goes to the question of the competency of the introduction of certain photographs showing the nature and extent of the injuries. We think the photographs in question were clearly competent, admitted as they were, after identification.

This brings us to the remaining assignment of error, and that is, that the respective verdicts were excessive, and so excessive as to evince passion, prejudice, and caprice upon the part of the jury.

As hereinbefore stated, remittiturs were suggested by the trial judge and accepted under protest, and his action in suggesting and requiring the remittiturs as a condition precedent to a denial of the motions for new trials is assigned as error by appellees in the respective cases.

We will first take up and consider the verdict of Mrs. Rozella Acquino. By the force of the impact her scalp was completely torn from her skull so that the same lay back over her shoulder. This was replaced by stretching it back over the skull. Her lower jaw bone was broken through on each side of her chin; her teeth were sheared off even with her gums. She was thrown violently against the steering wheel and her chest, as a result, was bruised and crushed.

She was rendered unconscious and did not regain consciousness for about twelve hours. She was taken by ambulance to a hospital in Memphis. She was first given antitetanus serum. Her scalp was pulled back over the skull and sutured; her chin, which was considerably drawn by reason of the fractured jawbone, was thrown out of line by the contracting of the muscles, and had to be forced back into alignment and her lower jaw was wired to her upper jaw so as to hold it in alignment and in place.

For the four weeks that she was in the hospital she could only take liquid nourishment, which was administered through a tube going through an opening made by missing teeth. This resulted in nausea. She could not open her mouth at all, and this resulted in her having to swallow vomit resulting from nausea.

When it came to removing the wiring which wired her lower jaw to her upper jaw, it was discovered that proud flesh had grown around where the wire entered, so that the wire had to be cut out. When the bones of the jaw had become sufficiently united, the dentist began removing the roots of the teeth that had been sheared off

about flush with the gums. This had to be done by chiseling the jaw bone away from the roots. This work had to be done at different intervals, covering several months.

After the wiring had been removed the jawbone was still not in line, so that the dentist could properly repair the teeth, and this necessitated the dentist's making braces or blocks out of a hard compound to completely fill her mouth and exert sufficient pressure to force the jaw into alignment. She had to wear these braces every day and was wearing them on the day of the trial. The braces had no teeth in them and had to be removed at every meal.

The bony structure was still undergoing changes at the time the case was tried, and there had not been sufficient alignment for the proper fitting of false teeth at the time the case was tried. From the testimony of the dentist it is very probable that he can eventually make a set of upper and lower dental plates by removing her three remaining teeth.

Mrs. Acquino was forty-one years old at the time of the trial. There is evidence in the record that she was a very attractive and good-looking woman. As a result of this accident she was badly disfigured and broken, highly nervous, and neurotic. Prior to the accident she was a strong, healthy woman with a bright and cheerful and happy disposition. The shock of the result of the injuries has left her weak, timid, and disinclined to meet and associate with her former friends, being conscious of her unattractive appearance.

The jury returned a verdict in her favor for $20,000. The learned trial judge, who had the opportunity of seeing this lady and hearing her testify, and of observing her manner and demeanor as a witness, suggested a remittitur of $5,000. We cannot say that the verdict as reduced by the remittitur was excessive, considering the unusual injuries sustained by her. However, we may dispose of her assignments of error by stating that we think the remittitur was properly suggested and we are not inclined to restore the jury verdict. It results that all assignments of error in the case of this appellant, Mrs. Rozella Acquino, both by plaintiff in error and defendant in error, are overruled, and the judgment of the lower court in her favor for the sum of $15,000 is affirmed.

In the matter of the verdict in the case of Richard Acquino, the verdict was for $15,000, and by the remittitur of $5,000, was reduced to $10,000. Richard Acquino, a boy of eleven years of age, was in the automobile at the time of the accident. He was placed in an ambulance and at once lost consciousness. He only remembered getting out of the car after the accident, and discovering that his leg was broken and his hand mangled and bleeding. He remembered being placed in the ambulance when he lost consciousness. He regained consciousness in a hospital in Memphis, some time during the night. His leg was broken, and Dr. Speed, the surgeon, tried

to reduce the fracture and hold it in place with a plaster cast. The bone slipped and overlapped while it was in the cast. A part of the cast was cut away; a hole was drilled through the bone below the break, through which the surgeon ran a steel wire. The wire was attached to weights and for three weeks the weights pulled and strained at the contracted muscles. This occasioned great pain and physical suffering to Richard.

He remained in the hospital for about one month when he was taken home, but he returned some time afterwards to have the cast removed. While wearing the cast the skin underneath became infected, and he suffered great pain and physical discomfort on account of the infection. When the cast was removed the skin came off with it.

One of his hands was badly torn and mangled, requiring the amputation of one of his fingers. Another one of the fingers was stiff so that it could not be bent. He is permanently crippled in his hand, and it has been rendered practically useless.

At the time the case was tried he still suffered from his leg when it was exercised for any considerable length of time, causing swelling. His face was cut, leaving it scarred and disfigured. The overlapping of the bones in the leg is about one-half inch. While the bone in the broken leg is united, yet there is some lack of normal motion, due to the slight shortening of the leg. His hand is permanently impaired almost a hundred per cent., since it has been rendered practically useless for many purposes.

We have carefully considered all the evidence on the subject of the injuries sustained by Richard Acquino. We think the verdict of $15,000 was excessive. However, we are further of the opinion that the remittitur of $5,000 sufficiently reduced the verdict. The learned trial judge saw this young man and had full opportunity to observe his condition at the time of the trial; the scar on his face, the impairment to the injured hand, and also the effects of the broken leg. We do not think that the judgment of $10,000 was excessive. Nor do we think that there was error in the action of the trial judge in suggesting the remittitur and reducing the judgment to $10,000. It follows that the assignments of error of both parties on the question of the amount of the verdict and judgment in favor of this plaintiff, Richard Acquino, are overruled.

This brings us to a consideration of the verdict and judgment in the case of Dan Acquino, the husband of Mrs. Rozella Acquino, and the father of Richard and Phillip Acquino. The jury verdict in his case was for $10,000, and the trial judge suggested a remittitur of $2,500, reducing the verdict and judgmet to $7,500.

For appellants, Colonial Baking Company et al., it is urged that the verdict as reduced by the remittitur is still excessive. While it is contended by Mr. Acquino that the evidence well warranted the

jury verdict of $10,000, and that it was error for the trial judge to have suggested and required the remittitur of $2,500.

According to the evidence, the automobile was owned by Dan Acquino, and was badly damaged by the collision. It further appears that Mr. Acquino has already paid doctors' bills and hospital bills, together with the damage to the automobile, at the time of the trial, in the sum of $2,400; that he incurred additional expenses for necessary trips from Hickman, Ky., to Memphis, Tenn., to take the members of the family to Mempis for treatment. The distance is 122 miles. It is claimed that the mileage on the automobile without considering the loss of time and the expenses incident thereto, was about $146. It also appears that Mrs. Acquino had, up to the time of her injuries, worked regularly in her husband's pressing shop, and that after her injuries it became necessary for Mr. Acquino to employ a man to do the work that she had been doing, and for which he paid him $60 per month, and which amounted to the sum of $540 to the date of the trial.

It also appears that there will be additional expenses incurred for dental treatment and services on account of the injuries to Mrs. Acquino's teeth and broken jaw. This is estimated at from $500 to $1,000, but is a mere estimate.

It is contended for Mr. Acquino that he has permanently lost the services of his wife at the pressing shop and that because of the serious injuries sustained by her and her present physical condition resulting from the injuries that she will never be able to render service in the shop, or if at all, not as capably as before the injuries; that because of the maimed condition of the hand of Richard that he will not be able to render as efficient service to his father as before the injuries and that all these matters were properly considered by the jury in rendering a verdict in favor of Dan Acquino for $10,000.00. He was not in the automobile at the time of the accident. A large amount of the damages claimed by Mr. Acquino is rather speculative. It cannot be with accuracy determined what his actual loss will in the ultimate amount to.

We have read the record with painstaking care to determine the question of the amount of damages sustained by him already and the possible or probable future damages on account of the impaired condition of his wife and of his son, Richard, to render service.

We are of the opinion that the judgment in his case should be further reduced, and that the sum of $5,000 would fairly compensate him for the present and future losses and expenses sustained, and in his case suggest a further remittitur of $2,500, reducing the judgment to $5,000, and unless this suggested remittitur is accepted, the assignment of error by the appealing defendants on the question of the excessive judgment will be sustained and his case remanded to the circuit court of Shelby county for a new trial.

This disposes of all the assignments of error. It results that all assignments of error by both parties are overruled, except the assignment of error by the appealing defendants on the question of the verdict and judgment after the allowance of the remittitur in the case of Dan Acquino, are overruled. And upon the acceptance of appellee, Dan Acquino, of the additional suggested remittitur, so as to reduce the judgment in his case to $5,000, will be affirmed. Otherwise, it will be remanded to the circuit court of Shelby county for a new trial.

The cost of this appeal of the three consolidated cases brought up by the appeal to this court will be divided and paid as follows: Three-fourths of the cost of this appeal will be paid by appellants, Colonial Baking Company, and L. M. Meeks, and sureties on their appeal bond; and one-fourth of the cost of this appeal will be paid by Dan P. Acquino.

Anderson and Ketchum, JJ., concur.