# WALLER v. SKELETON et al.—212 S. W. (2d) 690.

Middle Section.  January 3, 1948.

Petition for Certiorari denied by Supreme Court, May 3, 1948.

106

McReynolds & Marks, of Clarksville, for plaintiff.

Goodlett & Goodlett, of Clarksville, and Lewis C. Payne, of Nashville, for defendants.

FELTS, J. Defendants ask a rehearing and leave to suggest the diminution of the record. They have filed certified copies of the minutes, which had been omitted from the transcript, and a certifcate by the clerk showing that their motion for a new trial was filed November 6, 1946, within 30 days from the entry of the verdict and judgment on October 30, 1946.

These minutes show that the trial court did not adjourn the October term to court in course. On October 30, it adjourned till next morning, and continued to meet and adjourn from day to day, dispatching its business, until November 9, 1946. On that day, which was Saturday, the minutes concluded: "Court thereupon adjourned until tomorrow morning at nine o'clock. Dancey Fort, Judge."

The next minute entry was for November 30, 1946. Meanwhile the intervening terms in other counties in the

circuit were: November 11, Stewart; November 18, Houston; and November 25, Dickson. Code sec. 159. The minutes of November 30 commenced as follows:
"Circuit Court Minutes, 30th Day October

Term, November 30, 1946
"Saturday Morning

Montgomery County
"November 30, 1946

"Court met at nine o'clock pursuant to adjournment with the Honorable Dancey Fort, Judge, etc., present and presiding when the following proceedings were had and entered of record, to-wit:"

Then followed orders or judgments in some ten cases, including the case before us. In this case the minute entry showed that the trial judge that day overruled defendants' motion for a new trial, approved the verdict in all respects except its amount, and being of opinion it was "so excessive as to indicate passion, prejudice or unaccountable caprice on the part of the jury," suggested "on that account" a remittitur of $13,000.

This minute entry further showed that plaintiff accepted the remittitur under protest, prayed, and was granted an appeal and was allowed 30 days to prepare his bill of exceptions and to perfect his appeal by giving bond or taking the oath. He filed the oath December 2, 1946, and his bill of exceptions was signed by the trial judge and filed by the clerk December 16, 1946. The minutes of November 30, 1946, concluded thus: "Court thereupon adjourned until tomorrow morning at nine o'clock. Dancey Fort, Judge."

The next minute entry was for December 30, 1946. It commenced with a caption exactly like that above quoted except the date. Then followed two orders in this case, the first granting defendants an appeal in error from the

judgment, and the second allowing them until January 18, 1947, to file their bill of exceptions. They filed their appeal bond December 30, 1946, and their skeleton bill of exceptions was signed by the judge and filed by the clerk January 11, 1947.

■ The minutes now before us show that the trial term ran through November 9, 1946. It also appears that defendants' motion for a new trial was filed November 6, 1946, within 30 days from the entry of the judgment on October 30, and within the trial term. So this motion was seasonably filed.

Being seasonably filed, this motion suspended the judgment and continued the trial judge's jurisdiction until he could dispose of the motion. He could do this at a special term (Code secs. 9935, 9936), at an adjourned term (secs. 9937, 9945.5, Ch. 7, Acts 1943), or at a subsequent regular term (sec. 159), and could then grant an appeal in error and allow time for perfecting it and for settling a bill of exceptions, for these purposes the judgment being regarded as entered at the time of overruling of the motion for a new trial. Code sections 8822 (as amended by Ch. 145, Acts 1939, and Ch. 152, Acts 1941) and 9047; Mitchell v. Porter, 26 Tenn. App. 498, 511-517, 173 S. W. (2d) 443, 448-450, and cases there cited.

■ ■ So on November 30, when he overruled the motion and suggested the remittitur, which plaintiff accepted under protest, he had authority to grant plaintiff an appeal (Code sec. 8987) and allow 30 days, as he did, for perfecting the appeal and settling the bill of exceptions. Code sections 8822 (as amended) and 9047; Mitchell v. Porter, supra, and cases there cited. Plaintiff's appeal was perfected December 2 and the bill of exceptions filed December 16, within the time allowed. Since the remittitur was suggested on the ground stated (Code sec. 8987),

no motion by plaintiff for a new trial was necessary in order to have this action reviewed on appeal. Jones et al. v. City of Knoxville, 172 Tenn. 1, 108 S. W. (2d) 882. So the bill of exceptions and plaintiff's appeal were valid.

But was defendants' appeal in error valid? As we have seen, it was granted by the order entered December 30, and their appeal bond was filed the same day. Excluding the first day and including the last (Code sec. 11; Taylor v. State, 180 Tenn. 62, 171 S. W. (2d) 403), this was the thirtieth day, before the lapse of 30 days, from November 30, the day on which the motion for a new trial was overruled and on which the judgment must be regarded as entered. Since 30 days had not elapsed, the trial judge had jurisdiction to grant defendants an appeal in error (Code sec. 9047), provided the term had not ended; i. e., if the sessions of November 30 and December 30 were one and the same term. Mitchell v. Porter, supra, and cases there cited; Strain v. Roddy, 171 Tenn. 181, 101 S. W. (2d) 475; cf. McCanless v. State, 181 Tenn. 308, 181 S. W. (2d) 154, 153 A. L. R. 832.

By Code sections 9935, 9936 the trial judge was authorized to appoint a special term when necessary for the dispatch of the business of his court. By section 9937 he was authorized, if such business required, to adjourn the regular October term and hold an adjourned term after the time fixed by law for holding his court in some other county or counties in his circuit. He was given still more authority by section 9945.5 (Ch. 7, Acts 1943), which is in these words:

"Any judge, when holding any regular, adjourned or special term of the circuit or criminal court and the business of such court requires it, may adjourn such court and hold an adjourned term or terms at a time during or following the expiration of the time allowed by law for

holding such regular term and during or subsequent to a time or times fixed by law for the holding of the circuit or criminal court by said judge in some other county or counties in the same judicial circuit with the county in which such adjourned term or terms of the court is to be held.

"All proceedings of such circuit or criminal court, at the regular, adjourned and special terms of the court, herein provided for, shall be valid and legal and have the same force and effect as if all done at the regular term and no time had intervened between the terms, and the two or more shall be and constitute but one term."

Under sections 9935-9937 such special or adjourned term was to be appointed by order entered on the minutes or by publication in a newspaper in the circuit (Lieberman, Loveman & Cohn v. Knight, 153 Tenn. 268, 283 S. W. 450; Mullen v. State, 164 Tenn. 523, 51 S. W. (2d) 497). But section 9945.5 does not prescribe the manner in which the judge shall provide for the adjourned term or terms.

It is true there is no minute entry before us adjourning the court till November 30, or December 14, or December 30, 1946. But the minutes do state that the court met on each of these days "pursuant to adjournment." These recitals import absolute verity, and we think they were a substantial compliance with Code section 9945.5. Compare: Standard Oil Company of New Jersey v. Naramore, Tenn. App., 207 S. W. (2d) 7.

Under this section these three sessions constituted but one and the same term. It follows that the trial judge had jurisdiction to grant defendants an appeal in error on December 30, that being within 30 days from the judgment, regarded as entered November 30, and within what

was in legal effect one and the same term of the court; and that defendants' appeal in error was valid.

Plaintiff, however insists that, since all of defendants' assignments of error relate to matter which must be made to appear by bill of exceptions, we cannot review such assignments, because the bill of exceptions saved by defendants was a mere skeleton form and invalid. Battier v. State, 114 Tenn. 563, 86 S. W. 711; Rose v. Third Nat. Bank, 27 Tenn. App. 553, 563, 183 S. W. (2d) 1, 5.

Defendants' appeal in error does not depend on that bill of exceptions. The one saved by plaintiff is available to both parties. Williams v. Bowdon, 31 Tenn. 282; Hughes v. Young, 17 Tenn. App. 24, 27, 28, 65 S. W. (2d) 858, 860. These were cases of writs of error, but the principle is equally applicable to appeals in error. The bill of exceptions, regardless of which party takes it, must contain all the evidence of both parties and be a complete record of the trial. That record does not belong to either party, but is equally available to both, whether on appeal in error or on writ of error.

So defendants' petition is granted, our former order dismissing the appeals in error is vacated, and we proceed to review the assignments of error of both parties, considering those of defendants first. Their first insistence is that there was no evidence to support the verdict.

The collision occurred on the afternoon of July 4, 1946, some four miles south of Clarksville on the Clarksville-Dickson Highway, Tennessee Highway No. 48. That was an asphalt highway, it was raining, and the road was slick. There seems to have been much traffic on it. That afternoon the colored people (the parties and most of the witnesses being of that description) were having a

picnic at Round Pond on Highway 48 several miles south of Clarksville.

Defendant Albert Roberts operated a taxicab business in Clarksville. A number of his cabs were taking passengers out to Round Pond. Two of these cabs, one driven by defendant Skeleton and the other by Red Hampton, were returning from Round Pond to Clarksville, the Skeleton cab being behind the Hampton cab. Plaintiff and three of his friends, Charles Roberts, Irvin Webb, and Vernon Orgain, were in Orgain's automobile going from Clarksville toward Round Pond. Orgain was driving, Webb and Roberts were on the front seat with him, and plaintiff was on the rear seat. A Ford car, driven by a white man by the name of Curtis, was following close behind Orgain's car.

The evidence for plaintiff was that Orgain's car was on its right side of the highway going south at the rate of about 25 or 30 miles per hour. The Skeleton cab was coming north about 65 or 70 miles per hour. Just as these vehicles were approaching the crest of a hill, and as the Hampton cab was meeting the Orgain car, the Skeleton cab undertook to pass the other cab, and pulled over on its left side of the highway right in front of the Orgain car followed by the Ford. Orgain turned to his right over on the shoulder, put on his brakes, and tried to stop. The Skeleton cab, apparently putting on its brakes, began to skid, its left front struck the left side of Orgain's car, knocked the car over on the embankment, the rear end of the cab swung around, and it stopped crosswise of the highway on its right side; and the Ford car ran into the rear of Orgain's car, all three of the vehicles being badly wrecked.

The evidence for defendants was in conflict with the evidence for plaintiff. Skeleton denied that he pulled from behind the other cab, and denied that the accident happened on his left side of the road. Other witnesses for defendants testified to the same effect. One of defendants' assignments of error is that the verdict is against the weight of the evidence, and much of their argument is devoted to that proposition.

■■ But we cannot weigh the evidence. It was the exclusive province of the jury to decide upon the credibility of the conflicting witnesses and to settle this conflict in the evidence. We think there was ample evidence to support the verdict. Indeed, it is difficult to see how the Hampton cab passed without colliding with the Orgain car and the Ford car, if these cars were on their left side of the road, as defendants' witnesses testified. Cf. Reed v. State, 172 Tenn. 73, 75, 110 S. W. (2d) 308.

Defendants complain of the trial judge's refusal to charge their requests Nos. 1, 2, and 3. The action of plaintiff Waller was tried together with the action of Orgain (there being no question before us as to the latter case), and these requests were tendered in both actions and were as follows:

Request No. 1:

''I further charge you gentlemen of the jury that where there are two or more independent causes or acts from which there is damage sustained, and that damage is such that it cannot or is not by the testimony separated so that you can determine what damage was caused by each separate cause or act, it will be your duty to render a verdict in favor of the defendants.''

Request No. 2:

"I further charge you gentlemen of the jury that you cannot speculate upon a damage sustained by the plaintiffs or separate the damage if inflicted by more than one party, when the damage sustained is not the concurrent negligence of both parties, and if you find that any of the injury or damage hereafter to have been sustained by the plaintiffs were the consequence of the negligence of any other person not concurrent with the negligence of the defendants, you shall return a verdict of not guilty in favor of the defendant."

Request No. 3:

"Gentlemen of the jury, there has been testimony introduced to the effect than an automobile driven by a white man at the rear of the car of plaintiff, Orgain, and the car in which plaintiff, Waller, was riding, ran into the rear of the car of the plaintiff. I now charge you that if the injury complained of by the plaintiffs and damage sustained was a result of the negligence of such white man, which negligence was not concurrent with any negligence of the defendant, you should return a verdict of not guilty in favor of the defendants."

It was not error to refuse these requests. The first two were not the law in any case; and the third, even if abstractly correct, could have no application on any reasonable view of the evidence in this case. A defendant's negligent act, in order to be the proximate or legal cause of plaintiff's injuries, need not have been the whole cause or the only factor in bringing them about. It was enough if such act was a substantial factor in causing them. Restatement, Torts, secs. 431, 433, 435; 1 Street, Foundations of Legal Liability, 109-123; Jackson v. B. Lowenstein & Bros., Inc., 175 Tenn. 535, 136 S. W. (2d) 495.

■ Where there were two causes which proximately contributed to plaintiff's injuries, for only one of which defendant was responsible, and with the other of which neither he nor the plaintiff was chargeable, defendant is liable for all of such injuries to the same extent as if they had been caused by his negligence alone. Columbia & Bigby Turnpike Co. v. English, 139 Tenn. 634, 202 S. W. 925; Schrader v. Kentucky-Tennessee Light & Power Co., 157 Tenn. 391, 402, 8 S. W. (2d) 495, 62 A. L. R. 495; Rhoton v. Burton, 2 Tenn. App. 164, 171; Yarbrough v. L. & N. R. R. Co., 11 Tenn App. 456, 469.

■ Assuming that the driver of the car that struck the rear of the Orgain car was negligent in so doing, and that his negligence was one of the causes of plaintiff's injuries, still it could not be said that his negligence was not concurrent with defendants' negligence. There need have been no concert between him and them; it would be enough that their independent negligent acts both proximately contributed to plaintiff's injuries; each would be jointly and severally liable for all of such injuries. Columbia & Big Bigby Turnpike Co. v. English, supra, and other cases cited above; Price-Bass Co., Inc. v. Owen, 24 Tenn. App. 474, 479, 146 S. W. (2d) 149, 152; 52 Am. Jur., Torts, sec. 112.

"It is no defense for a wrongdoer that a third party shared the guilt of the same wrongful act, nor can he escape liability for the damages he has caused on the ground that the wrongful act of a third party contributed to the injury." Miller v. Union Pac. R. Co., 290 U. S. 227, 236, 54 S. Ct. 172, 174, 78 L. Ed. 285, 291.

■ There was, however, no evidence of any negligence on the part of the driver that ran into the rear of the Orgain car. He was following close behind that car

in a stream of traffic; and when, as the jury found, defendants drove their cab over the crest of the hill on the wrong side of the highway, in the face of congested oncoming traffic, they were guilty of gross negligence (Code sec. 2686), which created a risk of injury or death not only to those in the front car but also to those in the following car, and which made these collisions not only probable but almost inevitable. Reed v. State, 172 Tenn. 73, 75, 76, 110 S. W. (2d) 308, 309. The jury were well warranted in finding that such negligence was the sole proximate or legal cause of both collisions and all the injuries that ensued. Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 130, 131, 178 S. W. (2d) 756, 757, 758; see also Cartwright et al. v. Graves, 182 Tenn. 114, 134, 135, 184 S. W. (2d) 373, 381.

Defendants complain of the trial judge's refusals of their special requests 5, 6, and 7 asking the judge to charge the jury that plaintiff's failure to call Curtis, the driver of the Ford car, as a witness raised an inference that his testimony would have been unfavorable to plaintiff and would not have supported plaintiff's contentions.

We find no error in these refusals. It is true that where a party has it within its power to produce a witness who was in position to know the facts, and was apparently favorable to him, his failure to call such witness affords an inference that the testimony of the witness would not support his contentions. This rule has been applied in numerous cases by our Supreme Court and by this Court. For the most part such cases were where a defendant employer had failed to call his employee as a witness. Western Union Tel. Co. v. Lamb, 140 Tenn. 107, 203 S. W. 752; National Life & Acc. Ins. Co. v. Morrison, 179 Tenn. 29, 41, 162 S. W. (2d) 501; Stevens v.

Moore, 24 Tenn. App. 61, 139 S. W. (2d) 710; Illinois
Cent. R. Co. v. H. Rouw & Co., 25 Tenn. App. 475, 159 S.
W. (2d) 839; The Vogue, Inc. v. Cox, 28 Tenn. App. 344,
190 S. W. (2d) 307.

But we think the rule was not applicable to the
case before us. Plaintiff called as witnesses all the oc-
cupants of the Orgain car, as well as the bystanders who
saw the accident and the State Highway Patrolmen who
examined the cars shortly afterwards. He and his coun-
sel might well have thought that Curtis' testimony would
be merely cumulative. Besides, this witness was equally
available to defendants. The unfavorable inference is
based, not on the mere fact that a party did not call a
particular person as a witness, but on his nonproduction
when it would have been natural for him to produce the
witness if the facts known by him had been favorable.
2 Wigmore on Evidence, secs. 286-288. So there would
seem no more ground for an unfavorable inference
against plaintiff for his failure to call Curtis than for an
unfavorable inference against defendants for their fail-
ure to call him.

In fact, it was shown on the motion for a new trial that
Curtis' suit against defendants was set for trial on the
same day as the present case; that plaintiff expected Cur-
tis to be present and intended to use him as a witness; but
that shortly before the trial defendants settled with Cur-
tis and he was not present at the trial of this suit.

Finally, defendants insist that the verdict was so ex-
cessive as to indicate passion, prejudice, and caprice on
the part of the jury; and that this vice of the verdict was
not cured by the remittitur, but the judge should have
granted defendants a new trial.

In support of this ground of the motion for a new trial, defendants offered the affidavits of two of the jurors. One of these affiants, juror Grizzard, stated, "that during the deliberation of the jury in these cases it was stated by one of the jurors as follows: 'taxicabs drive too fast around here and this will be a warning or example to them.' I then stated that we were engaged in trying defendants and not taxicab drivers as a class." The other affiant, juror Seay, stated:

"That in reaching the verdict in these cases, it was generally discussed among several of the jurors that taxicab drivers as a class are negligent, reckless, and inconsiderate of the rights of others; and that they should be punished for the manner in which they generally drive upon the streets of Clarksville and the highways of Montgomery County, Tennessee; and I believe that it was the general intention of the jury in these cases to punish taxicab drivers, and to make an example out of these defendants."

Plaintiff produced affidavits by the other ten of the jurors stating that the jury reached their verdict upon the evidence and the charge; that they were not prejudiced in any manner, and their opinions were not influenced by the fact that a taxicab was involved; and that the verdict was not intended as a punishment of the taxicab driver or the owner, nor as an example to others, but was only the jury's estimate of the damages plaintiff had sustained by reason of the negligence of defendants.

Thus all of the jury except one showed that the verdict was reached in the proper manner and was not influenced by any prejudice against taxicab drivers; while that one merely stated that he believed it was the general intention of the jury to punish taxicab drivers and make an example of these defendants.

It is well settled that the affidavits of a juror with respect to what influenced him in reaching a conclusion will not be received to impeach the verdict; and that jurors will not be heard thus to stullify themselves. McAlester v. Montverde, 22 Tenn. App. 14, 20, 115 S. W. (2d) 257, 260, 261; Colonial Baking Co. v. Acquino, 20 Tenn. App. 695, 705, 103 S. W. (2d) 613, 620.

This is not a case like Marshall v. North Branch Transfer Co., 166 Tenn. 96, 59 S. W. (2d) 520, where it was shown that the jury were having difficulty in agreeing on a verdict, that statements were made that the defendant was protected by insurance, that such statements induced the jury to agree on a verdict for plaintiff, and that this misconduct was proved by affidavits of four jurors, which affidavits were undenied and undisputed by any other member of the jury.

This case is more like the later case of Thomason v. Trentham, 178 Tenn. 37, 154 S. W. (2d) 792, 138 A. L. R. 461, where there was a discussion to the effect that defendant had insurance, and the jury agreed that they could not consider such things in agreeing upon a verdict. So we think the trial judge properly refused to grant defendants a new trial upon this ground of their motion.

This brings us to the question of the propriety of the remittitur and to plaintiff's assignments of error. Through them he insists that the verdict was not excessive and no more than fair compensation for his injuries, that the trial judge labored under the error that the present value of money was not to be considered in estimating the amount necessary to compensate for plaintiff's injuries, that he misappreciated the uncontradicted evidence as to the extent of the injuries in this case and substituted therefor his own observation and experience in other

cases, and that these errors misled him to the erroneous conclusion that the verdict was so excessive as to indicate passion, prejudice, and unaccountable caprice on the part of the jury, and induced him to order the remittitur.

To support these assignments plaintiff refers to this language of the trial judge in disposing of defendants' motion for a new trial and ordering the remittitur:

"In the case of Eddie Lawrence Waller v. Solia Skeleton and Albert Roberts d/b/a Your Cab Company, I suggest a remittitur of $13,000.00 and if it is not accepted a new trial will be granted. I am not saying that the verdict in this case evidenced that the jury acted with prejudice or passion. I don't understand just what was on their minds unless it was inflation and the high cost of living. I cannot account for it. Dr. Pannell's testimony was that the injuries were permanent and Dr. Workman testified that the plaintiff might recover. I have seen many such injuries and I believe the plaintiff will recover. The verdict is otherwise approved.

"My attention has just been directed to the fact that the wording of Ground #3 of the motion for a new trial appears to come within Section 8987 of the Code of Tennessee and I direct that the order on this motion and suggesting of the remittitur show that my action is based on grounds providing for acceptance and making of a remittitur, under protest, in accordance with Section 8987 of the Code of Tennessee."

As we understand from this language of the trial judge, he was unable to account for the amount of the verdict and could not understand "what was on their minds unless it was inflation and the high cost of living." Apparently his Honor thought that this was not a proper matter to be considered by the jury in fixing the amount to compensate plaintiff for his injuries.

■ We think this was error. The inflation, the high cost of living, and the impaired purchasing power of money are proper considerations by a jury in fixing the amount of damages, by the trial court in determining whether the amount of the verdict is excessive and whether he should approve it, and by the appellate courts in reviewing the question of excessiveness or inadequacy of verdicts. This is true because compensation means compensation in value, and the value of money lies only in what it will buy. Power Packing Co. v. Borum, 8 Tenn. App. 162, 182; 15 Am. Jur., Damages, sec. 71, p. 481, also sec. 204, p. 621.

We also think the learned trial judge failed to appreciate the force and effect of the expert testimony as to the extent of plaintiff's injuries. Two doctors testified: Dr. Pannell who had treated plaintiff all the while and who was a witness for him; and Dr. Workman who examined plaintiff twice and testified as a witness for defendants. Dr. Pannell described plaintiff's injuries in detail and expressed the opinion that they were permanent. As we understand Dr. Workman's testimony, he reached no conclusion and expressed no opinion. He merely said plaintiff might recover or might not.

Dr. Pannell saw plaintiff the next day after the accident. He was semi-conscious, had received injuries to his back and head, and was bleeding from his nose and mouth. He was completely paralyzed in his lower extremities. His condition was so serious that Dr. Pannell brought him in an ambulance to Hubbard Hospital in Nashville.

He was there X-rayed, but the pictures failed to show any broken bones. He was treated by the staff of Meharry and Hubbard Hospital, one of these doctors being

the surgeon-in-chief, another a bone specialist, and another a nerve specialist. He remained at the hospital eight days and was brought in an ambulance to his home, where he was confined in bed for some six weeks. He went back to the hospital four times for further treatments.

His principal injuries were a concussion of the brain in the left front parietal region and an injury to the spine and nerves radiating therefrom. This spinal injury caused complete paralysis of both legs. After a while the paralysis disappeared in the left leg but has continued in the right leg. That leg is now smaller than the other and he has lost the use of it but is able to go about on crutches.

This brain injury has continued. It causes recurrent hemorrhages from the nose and mouth, when the patient complains of dizziness and everything getting dark. These injuries completely disabled plaintiff from doing any sort of work. Dr. Pannell said that these injuries were, in his opinion, permanent and would continue the rest of plaintiff's life.

There is no suggestion in this record that plaintiff is malingering or that he is not now totally disabled. Nor was there any effort to impeach or descredit Dr. Pannell as a witness. He is a graduate of Meharry and of Howard University, has been an active practitioner for twenty years, and seems to be thoroughly qualified as an expert. He said that his opinion as to the permanency of plaintiff's injuries was based on his consultations with the specialists at Meharry and Hubbard Hospital and his treatment and observation of the patient.

Dr. Workman on two different occasions examined plaintiff's back and lower extremities but did not exam-

ine his head. Dr. Workman made no denial of the seriousness of plaintiff's injuries, nor did he express any opinion as to their permanency. On direct examination Dr. Workman testified:

"Q. Taking into consideration the history he gave you of the accident and his complaints as to how he was suffering, can you make a diagnosis of his present condition? A. You could not make a positive diagnosis, but by checking and double checking, trying to catch him off guard, I think you could come to a pretty accurate conclusion he was actually suffering and did have some weakness.

"Q. What is the extent of his disability? A. That would be hard to tell.

"Q. Be hard to tell? A. Yes, it may be a permanent thing, and again it may be after a few months he will regain his strength and it may disappear and there is another possibility that there might be some pressure on that cord there causing his trouble. An X-ray might let some light in and again it might not.

"Q. You say there is a possibility that it might be permanent and also a possibility that it might entirely disappear? A. That is right."

On cross examination he said:

"Q. You state that you examined him and tried to catch him off guard, which you have a right to do in examinations, and did you find any evidence that he was putting on an act or acting? A. No, don't think he was.

"Q. You think he was suffering as he said he was? A. That is my belief.

"Q. You found no evidence that he was putting up a sham or front? A. No."

It appears without contradiction that these injuries have caused plaintiff great pain and suffering. Dr. Pannell testified that plaintiff suffered excruciating pains and often had to call him at night and that he gave plaintiff sedatives to quiet his pain and suffering. It seems highly probable that plaintiff will continue to suffer such pains as long as his injuries last, and that they will be permanent and continuous.

So all the positive evidence in this record indicates that plaintiff's injuries are serious and permanent and that he is totally and permanently disabled. That such evidence is largely expert opinion is no ground for doubting or discounting it. The issue as to plaintiff's condition and the permanency of his injuries was a matter that called for expert opinion. There was no other reliable guide for the jury, the trial court, or this Court for determination of that issue.

In City of Nashville v. Hiram Williams, Davidson Law opinion of the Supreme Court, filed April 6, 1935, unreported, where there was a similar issue, we, by suggestion of a remittitur, reduced a $10,000 judgment to $7,500. This largely because of our doubt or distrust of the expert testimony as to the permanency of plaintiff's injuries. The Supreme Court reversed our action and restored the judgment to $10,000. That Court quoted from National Life & Acc. Ins. Co. v. Follett, 168 Tenn. 647, 656, 80 S. W. (2d) 92, to the effect that where an issue cannot be intelligently determined, either by jury or judge, without the aid of medical advice, it is proper for the expert to express his opinion on the very issue to be determined. And then the Court said:

"The foregoing observations have direct application to the case under consideration. Both the jury and the

courts are wholly dependent on the opinions of the physicians as to whether this child's injuries are permanent.'' (Op., pp. 13, 14)

The same thing is true in the case before us. It would seem that the learned trial judge reached his conclusion as to the excessiveness of the verdict largely because of his doubt or distrust of the expert testimony as to the permanency of plaintiff's injuries, and because of his view that it was not proper to consider the inflation and the high cost of living in determining the amount of damages necessary to compensate for plaintiff's injuries. But for these two errors his Honor doubtless would have approved the amount as he did the verdict in all other respects.

We say this because the amount of this verdict, considering the seriousness and permanency of plaintiff's injuries and his pain and suffering, is not out of line with the amounts of verdicts in other cases more or less similar. It is true there is a wide range of variation in amounts even where the injuries are more or less the same, and no case is of much value as a precedent. But we have many cases where larger verdicts have been sustained for comparable injuries. Compare: National Life & Acc. Ins. Co. v. Morrison, 179 Tenn. 29, 162 S. W. 501; City of Nashville v. Brown, 25 Tenn. App. 340, 157 S. W. (2) 612; D. M. Rose & Co. v. Snyder, Tenn., 206 S. W. (2d) 897.

The law allows plaintiff but one action for his damages. If he is ever to be compensated it must be in this action. Such compensation must be not only for what he has suffered but also for what he will hereafter suffer. For these reasons we think the verdict was not excessive. This being so, Code section 8987 makes it

our duty to restore the judgment to the amount of the verdict. For that section provides in part:

". . . if, in the opinion of said court of appeals, the verdict of the jury is not so excessive as to indicate passion, prejudice, partiality, corruption, or unaccountable caprice on the part of the jury, and the judgment of the trial court is correct in other respects, the case shall be reversed to that extent, and judgment shall be rendered in the court of appeals for the full amount orginally awarded by the jury in the trial court."

Defendants' assignments of error are all overruled, plaintiff's assignments are sustained, and judgment will here be entered in favor of plaintiff against defendants for $18,000 and all the costs. Judgment will also be entered against defendants' surety on their appeal bond for all the costs of the appeal.

HOWELL and HICKERSON, JJ., concur.