WRight, J.,
delivered tbe opinion of tbe Court.
Tbis is a bill for contribution. In tbe examination of tbis record, we bave been anxious to find some ground, consistent with tbe rules of equity practice, upon wbicb to relieve complainant; and our first impressions were, that we could do so. But upon a more careful inquiry into the facts and authorities of the case, we are satisfied we cannot.
Tbe equity of contribution, arises when several persons are bound by a common charge, not arising ex delicto, and their order of liability has been accidentally deranged. If tbe liability be joint, he' who has paid more than bis share, is entitled to contribution from tbe rest. But this equity can never exist if tbe charge be not binding, or tbe liability arise ex delicto; for there can be no contribution between "wrongdoers. Tbe reason of tbis is, that they may be intimidated from committing the wrong, by tbe danger of each being made responsible for all tbe consequences. Merriweather v. Nixon, 8 T. R., 186; Peck v. Ellis, 2 J. C. R., 131.
Now what is the case stated in tbe bill for relief, and bow do these principles apply to it ? It is, simply, that in 1828, Matthew Rhea purchased of David and Samuel Hanby, a slave, Eliza, called in other portions, of tbe record, Louisa; and afterwards, in October of tbe same year, died, leaving six children; that though bis purchase was of tbe entire property, yet bis title was defective, and be only, at most, acquired an estate for tbe life of David Hanby and others, tbe title to tbe remainder in said slave being in the children of Samuel Hanby. That this slave remained tbe property of tbe estate until the 2d of June, 1836, having in tbe meantime bad three children, Sam, John and James, when (tbe life ’estate having terminated) they, with their mother Eliza, and one other slave, Charles, were divided,among the above named children, and distributees, of Matthew Rhea, as their property, though, at that very time, they belonged absolutely to the children of *123 Samuel Hanby, who, in the year 1843, brought suit in the Federal Court, at Knoxville, against complainant, who is one of the children of Matthew Rhea, and defendant, Owen M. White, who had married another child, for the whole of said slaves ; and in October, 1851, obtained the verdict of a jury for damages to the amount of $2550.00; the complainant and said White, to use the language of the bill, being thus “ oner-ated for the joint act of the whole of the distributees with the whole value of the family of negroes.”
This verdict, upon an application for -a new trial, was reduced, by a remittitur, to $2200, for which judgment was rendered, and the whole of which, with costs, complainant has paid, the said White being unable to pay anything.
The object of the bill is, to have this recovery equalized among the other five children, or their estates, so as to cause them to share the same with complainant.
The bill concedes, necessarily so, that this judgment was proper. And the record of the recovery in the Federal Court, which is an indispensable link in the complainant’s testimony, shows the action to have been trover, for the wrongful conversion of the slaves; and that the trial was had upon the pleas of not guilty, and the statute of limitations.
We understand this record to be evidence against the defendants, unless it be the defendant, Owen M. White, who was a party only of the fact of the judgment, and of the damages and costs recovered. 1 Greenl. Ev., secs. 527, 538, 539; Martin v. Conles, 2 Dev. & Batt. R , 101. It does not, as against them, establish the superiority of the title of Samuel Hanby’s children; and we cannot look into the depositions and other evidence in that cause, for the purpose of affecting defendants, they not being parties ; and for the further reason, that these depositions and this evidence seem to be no part of the record, not having been made so by bill of exceptions, and though certified in the transcript, are no part of it. The answers of defendants call in question the title of Samuel Hanby’s children, and upon strict law, it might be difficult for complainant, upon this record, to show that their recovery was *124 warranted. But if we look into the record and proof in the case in the Federal Court, complainant will not be aided. The title of Samuel Hanby’s children was of record in Patrick county, Virginia, the same having been derived by deed from David Hanby in 1825; and in the sale to Matthew Rhea, in March, 1828, and to his heirs in November of the same year, of the slave Eliza. David and Samuel Hanby were guilty of a fraudulent breach of trust, having assumed to dispose of the entire interest, when it is manifest the title to said slave was in the' children of Samuel Hanby, subject only to a life estate in David Hanby and wife. King et al. v. Sharp, 6 Hum., 55. And if we concede that Matthew Rhea, and his children, acquired the life interest of David Hanby and wife, yet, that estate ceased with the death of the longest liver, in 1834; and the division of Eliza and her increase, in June, 1836, by Matthew Rhea’s children, was, eo instanti, a wrongful conversion, for which they, or any of them, might be sued by Samuel Hanby’s children. 1 Dev. R., 306 ; 2 Kent, 323-4. The bill and the Chancellor’s decree proceed upon this principle; and we are satisfied from other facts the recovery was so had. The slave Eliza, in the division, was assigned to complainant; and after that event, and previous to the institution of the suit in the Federal Court, she had three other children, Joseph, Maria and Daniel. These, with the mother, and the three born before the division, we think, constitute the seven slaves embraced in the recovery. It is not probable that it extended to Moses and Mary, children of Eliza, born after the bringing of the suit in trover; their value, we apprehend, not being a proper subject of inquiry in that aetion. 2 Greenl. Ev., sec. 276; Vines v. Brownrigg, 1 Dev. and Batt. R., 239; Bethra v. McLennon, 1 Ird. R., 531.
It will thus be seen, that as to the slaves Eliza, Sam, John and James, the recovery must have been upon the joint conversion of complainant, and the other children of Matthew Rhea, growing out of the. division and other wrongful acts antecedent thereto; and as to the slaves Joseph, Maria and *125 Daniel, upon the personal and individual wrong of complainant. We need but state the case, to see there can he no relief. It is not even assisted by an allegation in the hill of ignorance of the title of Samuel Hanby’s children, or that the division was made in mistake, because of any belief in the validity of Matthew Rhea’s title, if that could be of any avail.
Some of the authorities go so far as to say, that with respect to mere breaches of trust, not involving any actual fraud, contribution may be had. But we apprehend these will be found to be cases growing out of the non-performance of civil obligations, or contracts. Such is the case of Lingard v. Bromley, 1 Ves. & B., 114; also, Thweath’s Adm’r v. Jones’ Adm’r, 1 Randolph, 828. Where the recovery is for a tort, as contradistinguished from a contract, I find no authority for contribution; and Lord Kenyon, in Merriweather v. Nixon, says there is none. And to the same effect is Lingard v. Bromley.
But without further examination of this doctrine, we think we may safely say, that a recovery against a party in trover, for a joint wrong, prima facie, at least, if not conclusively, so places him in pari delicto, as that he can have no contribution unless he aver and prove his innocence of the wrong; and that is not done in this case. Thweath’s Adm’r v. Jones’ Adm’r, 1 Randolph, 328.
If a covenant for contribution or indemnity could be allowed to prevail among joint wrong-doers, yet we do not see that any was made, or existed, in the division of the slaves between Matthew Rhea’s distributees, on the 2d of June, 1836, that can be of any assistance to complainant. The instrument of that date, executed between them, appears, simply, to be a quit-claim deed, wherein the slaves are divided with, at most, only a stipulation against any claim by the parties, their heirs, executors, and assigns, and contains no covenant of general warranty. The words, “ agree to support to each other the above named negroes as divided above, by paying to each other the amount agreed on to each other, so as to make all *126 the heirs equal in said negroes,” cannot, as we think, be so regarded. The entire phrase, as used here, is singular and > unusual. But we think its only effect is a stipulation to pay such sums of money as were due between the parties, in order to equalize the division, and that it was not intended to have any greater extent.
We furthermore think, if the law implies a warranty of title in the division of chattels, as in their sale, yet the implication here is excluded, as well by force of the quit-claim deed as the express covenants to be found therein. And so are the authorities. It is a rule, that where there is an express covenant, more limited in its nature than the covenant the law would imply, the implied covenant will be restrained by the mutual consent of both parties. Vanderkarr v. Vanderkarr, 11 Johns. R., 122; Kent v. Welch, 7 Johns. R., 259; Nokes’ Case, 4, Rep. 81.
If the complainant, by reason of the recovery in the Federal Court, fails to get his share in the slave Charles, still, as the bill is not framed with a view to that aspect of the case, and especially as it makes no case of mistake, as was done in Dacre v. Gorges, 2 Simons and Stewart, 454, we are unable to grant him relief even as to that branch of the case. As before remarked, he does?not even allege the existence of an honest belief in Matthew Rhea’s title at the time the slaves were divided. If aware of its defect, at the time, we perceive no ground on which to aid him. It was incumbent on him to make outjbis title to relief, in his bill.
The Chancellor’s decree will be reversed, and the bill dismissed.