KENNETH HOLDER, Administrator of the Estate of
William M. Holder, Deceased, Petitioner,

*v.*

PAUL MARTIN and FRANK MARTIN, dba, the
Martin Funeral Home, and Kenneth
Marcum, Respondents.

407 S.W.2d 461.

(*Knoxville,* September Term, 1966.)

Opinion filed September 27, 1966.

CHARLES D. SUSANO, JR., OLLIE F. COBB, AUBREY C. JENKINS, Knoxville, W. BUFORD LEWALLEN, and WALTER E. FISCHER, Clinton, for petitioner.

T. R. CHADWICK, Clinton, DENNIS L. BABB, and WARREN BUTLER, of counsel, YANCEY & BUTLER, Knoxville, for respondents.

MR. JUSTICE WHITE delivered the opinion of the Court.

On March 14, 1963, William M. Holder was involved in a two-car accident in Lake City, Tennessee. In that accident William M. Holder's automobile collided with an automobile owned by the Town of Lake City, and, at the time of the accident, being driven by the Lake City Chief of Police, Carl Wilson. As a result of that collision, William M. Holder suffered severe injuries. Approximately five minutes after the aforementioned accident, an ambulance owned by respondent, Martin Funeral Home, and being driven at that time by Kenneth Marcum, co-respondent here, arrived at the scene. Mr. Holder was placed in the ambulance and the ambulance proceeded toward LaFollette, Tennessee. In the Town of Jacksboro, Tennessee, the ambulance collided with a car driven by one Billy Allen, and it is this second and independent

accident which is the subject of this lawsuit. Mr. Holder was dead at the time of the arrival of a Mr. Hall, a funeral director and embalmer in LaFollette, shortly after the second collision. The evidence is hotly disputed as to whether or not Mr. Holder was dead prior to the second accident.

On July 19, 1963, Kenneth Holder, Administrator of the Estate of William M. Holder, filed his declaration in the Circuit Court for Anderson County, naming Paul Martin and Frank M. Martin, dba, The Martin Funeral Home, and Kenneth Marcum, as defendants. This declaration charged the respondents with statutory and common law negligence, and sought to recover damages for the death of William M. Holder. An order was entered on July 30, 1963, requiring the respondents to plead specially. On October 1, 1963, the respondents filed their special plea, denying the acts of negligence alleged, and asserting that at the time of the second accident, the decedent, William M. Holder, was already dead, as a result of injuries sustained in the first accident. The special plea further asserted that the sole proximate cause of the second accident was the negligence of one Billy Allen, the driver of the vehicle colliding with the Martin ambulance. On May 4, 1964, the respondents filed an amendment to their special pleas, setting forth the fact that the petitioner had entered into an agreement and settlement with representatives of the City of Lake City and Carl Wilson, for the injuries and death of William M. Holder, deceased. Respondents alleged that this settlement and agreement covered the same injuries and death sued for in the present action, and amounted to accord and satisfaction. That amendment is as follows:

The defendants for other and further special plea to the Declaration heretofore filed say that the plaintiff administrator, Kenneth Holder, and the widow of William M. Holder, Mrs. Gladys Holder, have heretofore entered into an agreement and settlement with representatives of the City of Lake City and Carl Wilson for the injuries and death of William M. Holder, deceased. Defendants aver that the settlement and agreement entered into by the parties arose out of the wreck in Lake City, Tennessee, involving Carl Wilson and William M. Holder and that said settlement and agreement covers the same injuries and death sued for in the present action. Defendants aver that the settlement and agreement relied on herein comprises and amounts to an accord and satisfaction which would discharge the defendants of any liability to the plaintiff. Defendants therefore specifically plead accord and satisfaction as an affirmative defense in this case.

On May 6, 1964, further amendment was allowed to the special pleas. This amendment contained a plea that the doctrine of election of remedies barred the petitioner's suit. That amendment is as follows:

As a separate, complete and affirmative defense the defendants plead the Doctrine of Election of Remedies, and the defendants aver that a release, settlement, compromise, agreement and/or payment has been entered into between Kenneth Holder, administrator of William M. Holder, and Gladys Holder, widow of William M. Holder, and Carl Wilson and/or the Town of Lake City, which estops the plaintiff from proceeding against the defendants and which bars any further action for the wrongful death of William M. Holder

in that the plaintiff has elected the remedy of proceeding against and settling with Carl Wilson and/or the Town of Lake City for the wrongful death of William M. Holder. An affidavit in support of this motion is attached hereto.

Petitioner made a motion to strike the amendments to the special pleas. It appears from the record, after argument, that this motion to strike was overruled. On September 22, 1964, the respondents were allowed to further amend their special pleas, setting forth in more detail an agreement entered into between the parties to the first accident, whereby the City of Lake City and Carl Wilson obtained what was entitled a covenant not to sue in return for payment to the Estate of William M. Holder of the sum of $5,000.00.

This cause came on for trial before a jury on September 21, 1964. The trial judge instructed the jury in the following manner on the defenses of accord and satisfaction and election of remedies:

In addition thereto, the defendants interpose certain pleas, one known as the doctrine of election of remedies, and in the other special plea they plead that the plaintiff had heretofore executed a release, agreed upon a transaction or agreement which constituted a release, and that if the insistence is made that the parties were—the defendants and the Town of Lake City and its police officer were joint wrongdoers, each contributing, the negligence contributing to the death of the intestate, then the plaintiff, by the execution of a release to the Town of Lake City and its police officer, has discharged in law, and as a matter of law, any right of action that it may have had against these defendants.

The defendants have interposed, as stated a few moments ago, a defense of accord and satisfaction, asserting that the plaintiff released an alleged joint tortfeasor or joint wrongdoer for a valuable consideration. Now a release is the giving up or abandoning of a claim or right to the person against whom the claim exists or the right to be forced or exercised. It is the surrendering of a cause of action, and a complete discharge to one joint wrongdoer discharges all other joint wrongdoers.

Now a covenant not to sue does not have that effect of discharging alleged joint tort-feasors or joint wrongdoers. A covenant not to sue is an instrument binding the plaintiff, or the injured party, not to sue or prosecute a cause of action he may have against the person he claims injured him. The elements of such a covenant are, first, no intention on the part of the injured person to give a discharge of the cause of action, or any part thereof, but merely to treat in respect of not suing thereon; second, a full compensation for injuries not received and only partial satisfaction; third, reservation of the right to sue the other wrongdoers.

A covenant not to sue does not operate to discharge other wrongdoers or joint tort-feasors or joint wrongdoers. And if it is a covenant not to sue, and the plaintiff be otherwise entitled to recover, then the defendant is not entitled to be credited with or benefited by the amount, or any part thereof, heretofore or theretofore received by the plaintiff from other wrongdoers or joint tort-feasors or joint wrongdoers.

Both transactions, whether releases or covenants not to sue, require a meeting of the minds of the parties

as to the terms and conditions of the understanding or agreement and require a valid consideration. No particular form, or no certain wording, is necessary to constitute a release or a covenant not to sue.

An instrument denominated a covenant not to sue can, in fact, be a release. Or a release, or an instrument denominated a release, can, in fact, be a covenant not to sue. In other words, you consider all of the facts, not only the language of such writings, if there are any, but all the surrounding facts and circumstances to determine just what was intended. And the intention of the parties is a matter of importance for you to consider in determining this issue. And in determining the intention of the parties, that may be ascertained from the language of the instrument or instruments, the surroundings of the parties, the circumstances attending the transaction, any prior negotiations or the acts of the parties subsequent to the execution of any agreement, the motives which induced the transaction or agreement, the object to be effected, all of the attendant facts and circumstances of the particular situation. I might say, a party represented by counsel, or attorneys, is bound by the acts of their duly employed attorneys acting within the scope of their employment or representation.

This other count interposed by the defendants, the doctrine of election of remedies, in that connection, gentlemen, you are instructed that the defendants have interposed the defense of the election of remedies. Election simply means choice. To be concluded by an election of remedies the plaintiff must not only have a choice of two or more effective remedies inconsistent of character, but he must also actually select one of

them; that is, he must by act or force of conduct or procedure, taken with the knowledge of his rights, without fraud or imposition by his adversary, resort to one of his means of redress evincing a purpose to forego the other means or modes.

The essential elements of the doctrine are, first, the existence of two or more remedies; second, the inconsistency between such remedies; third, a choice of one of them. If any of the elements are absent, the doctrine is not applicable and preclusion does not follow.

If the plaintiff had the choice of asserting and proceeding on the theory that the deceased died as a result of injuries wrongfully inflicted upon him in either of two different and separate accidents and settled on the basis that one of them was the cause of the wrongful death, even though it may not have been, and all other elements of the doctrine appear, then the plaintiff could not later pursue the claim of wrongful death resulting from the other accident and, under such circumstances, the defendants would not be liable.

It is these instructions which pose the determinative question for this Court's decision.

The jury returned a general verdict in favor of the defendants. Judgment was entered in accord with the jury's verdict. A motion for new trial was timely made and overruled. Appeal was perfected to the Court of Appeals. That Court, after finding that there was no basis for the trial judge's instruction on either the special plea of accord and satisfaction or election of remedies, affirmed the judgment of the trial court, finding the errors to be harmless within the purview of T.C.A. sec. 27-117.

This Court granted the petition for writ of certiorari filed by the petitioner, and oral argument has been heard.

The opinion of the Court of Appeals in this case leaves no doubt but that court held (1) the present record provides no support for the proposition that the respondents in this case were joint tort-feasors with the parties to the first accident and the settlement agreement, and (2) that the plea of election of remedies has no proper place in the instant case.

In order to support the defense that the settlement agreement between the Estate of William M. Holder and the parties to the first accident (whatever it may be designated) would bar relief against the respondents here, it necessarily must appear that the parties involved in the first accident may be rightly regarded, both factually and as a matter of law, as joint tort-feasors with the respondents. The law of this State requires that in order for multiple parties to be held joint tort-feasors, there must be either (1) concert of action, or (2) the accident and injury must have been the proximate result of their joint concurrent negligence. *Swain v. Tennessee Copper Co.,* 111 Tenn. 430, 78 S.W. 93 (1903), and *Schoenly v. Nashville Speedways,* 208 Tenn. 107, 344 S.W.2d 349 (1961). These requisites are simply nonexistent on this record. Here, there were two separate and distinct accidents at different times and places, and between different parties. It must follow that each of the parties whose fault caused or contributed to the separate accidents must separately bear the damage justly found to be occasioned by his wrong. There is no basis for any finding of joint and several liability attendant upon the status of joint tort-feasors.

■ ■ As previously stated, the Court of Appeals concluded that the doctrine of election of remedies was not properly applicable to the case at bar. We agree completely with that conclusion. An essential element of the doctrine of election of remedies is that the remedies be inconsistent. See *Phillips v. Rooker,* 134 Tenn. 457, 184 S.W. 12 (1915), and *White v. Henry,* 199 Tenn. 219, 285 S.W.2d 353 (1955). Here, there is nothing inconsistent as between the petitioner's settlement with the parties to the first accident and his bringing this action for injuries allegedly sustained in the second accident.

■ The Court of Appeals expressed the opinion that the erroneous submission to the jury by the trial court of lengthy instructions on these issues constituted harmless error. With this conclusion we cannot agree.

The charge of the trial court on the general propositions of law invoked in cases of this character appear to be adequate and correct. The charge submits to the jury three issues. The first is whether or not the second accident caused the injury to and death of the petitioner's decedent. The second is whether or not petitioner executed a release agreement to the parties charged to be responsible for the first accident which was effective to discharge the liability of the parties charged to be responsible for the second accident, as joint tort-feasors. The third is whether or not petitioner made an election of remedy in pursuing the parties to the first accident, which is effective to bar his action against parties to the second accident.

■ On this record, we are of the opinion that it affirmatively appears that the petitioner was materially prejudiced by the erroneous submission of these latter

two issues to the jury; and that submission of the same affirmatively affected the result. The language of the opinion of this Court in *Wilson v. Tranbarger*, 218 Tenn. 208, 402 S.W.2d 449 (1965), is quite apposite:

Of course, the harmless error statute, T.C.A. sec. 27-117, clearly shows that such an instruction is not harmless, and when the question of reversible error depends upon the facts and circumstances of each case, as it does here, the Court must reverse. See *Espitia v. State*, 199 Tenn. 696, 288 S.W.2d 731. In other words where there is an error committed which is not harmless, it is the obligation of this Court to reverse the matter for proper consideration under proper instructions. This was in effect the reason for the reversal in *McClard v. Reid*, 190 Tenn. 337, 229 S.W.2d 505. In the McClard case the trial judge had instructed the jury that, if the defendant was guilty of negligence which proximately caused the accident, then they would not consider any remote contributory negligence on the part of the plaintiff. This Court held that this instruction was erroneous, required a reversal of the trial court's judgment, and held that the harmless error statute (T.C.A. sec. 27-117) did not preclude a reversal in view of the erroneous nature of the court's charge.

It necessarily follows that the judgments of the Court of Appeals and the trial court are reversed; and the case is remanded to the latter court for further proceedings not inconsistent with this opinion. The costs of this appeal are assessed against respondents.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.