Gladys J. OLLIER, Executrix of the Estate of Louis N. Ollier, Deceased, Plaintiff-Appellant,

v.

LAKE CENTRAL AIRLINES, INC., and General Motors Corporation, Defendants-Appellees.

No. 19822.

United States Court of Appeals, Sixth Circuit.

April 7, 1970.

John W. Hackett, Jr., Toledo, Ohio, for appellant, Shumaker, Loop & Kendrick, John W. Hackett, Jr., Donald M. Mewhort, Jr., Toledo, Ohio, on brief.

Edward D. Crocker, Cleveland, Ohio, for Lake Central Airlines, Inc., Edward D. Crocker, Daniel C. Schipfer, Arter & Hadden, Cleveland, Ohio, on brief.

John R. Eastman, Toledo, Ohio, for General Motors Corp., Eastman, Stichter, Smith & Bergman, Toledo, Ohio, on brief.

Before WEICK and COMBS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

COMBS, Circuit Judge.

A Lake Central Airlines plane—Flight 527—crashed in Wyandot County, Ohio, on March 5, 1967, instantaneously killing all persons aboard. Plaintiff, executrix of the estate of a passenger killed in that crash, brought this diversity suit against Lake Central and General Motors Corporation alleging both a wrong-

ful death action and a survival action for pain and suffering arising out of in-flight injury. Both Lake Central and General Motors, manufacturer of the defective part which presumably caused the crash, admitted liability in the wrongful death action, and plaintiff recovered a judgment of $175,988. In the survival action, the district judge directed a verdict for the defendants on the question of punitive damages. The claim for compensatory damages for injury and conscious pain and suffering prior to death was submitted to the jury which returned a verdict for defendants. Plaintiff appeals from the judgment against her in the survival action.

An investigation conducted by the National Transportation Safety Board traced the cause of the March 5 crash to a defective torque piston in the plane's right propeller assembly which General Motors had failed to subject to a surface hardening process. This process insures permanent operation of the piston whereas the omission of the process can result in premature wearing and possible malfunction. Here, the failure of the non-hardened piston caused the propeller or the right engine to go into overspeed resulting in the separation of one of the propeller blades. This blade cut through the fuselage and severed the plane's electrical control system. The time from this in-flight occurrence to ground impact was forty-five to sixty seconds. The crucial proof at trial was directed toward attempting to establish through opinion testimony the effect which this in-flight occurrence had on the plane's structure and descent and, in turn, what effect the plane's descent had upon plaintiff's decedent during this forty-five to sixty second period.

Prior to the March 5 crash, on February 27, 1967, an Allegheny Airlines plane had experienced a malfunction in one of its propeller assemblies. That propeller assembly was returned to the manufacturer, General Motors, and, on March 3, the metallurgical laboratory reported that two pistons in the propeller assembly had not been subjected to the surface hardening process. Further examination revealed that a number of pistons possibly had been incorporated into twenty-two other propeller assemblies without first having been subjected to the surface hardening process. Accordingly, on March 3, General Motors alerted those airlines which had purchased the suspected propellers and advised them to check the oil filter, the magnetic drain plug, and the propeller assembly oil for the presence of any metal particles which would be indicative of defective pistons. On March 4, Lake Central performed this procedure on the plane which crashed the following day. The test proved negative and the plane was declared airworthy. The torque pistons in the propeller assembly could have been tested for hardness by another method which, although time-consuming, would conclusively have shown a "soft" piston.

On this appeal, plaintiff raises three issues: (1) whether the court erroneously instructed the jury on proximate cause; (2) whether plaintiff was entitled to a directed verdict in the survival action; and (3) whether the district judge improperly directed a verdict for defendants on the claim for punitive damages.

The district judge charged the jury in the survival action as follows:

"The issues to be determined by the jury as to the first cause of action are these:

"First, after the in-flight occurrence, and as a direct and proximate result of that occurrence, but before the aircraft struck the ground, did plaintiff's decedent * * * sustain some injuries which did not render him unconscious, but did cause him to suffer pain during that interval?

"Second, if so, what was the amount of damages suffered by plaintiff's decedent * * *?"

The district judge had previously defined the term "proximate cause." Plaintiff contends that the court erred in submitting the issue of proximate

cause to the jury since the only disputed question was whether there were injuries sustained prior to death.

■ We agree that the only jury question in the survival action was whether plaintiff's decedent suffered any injury prior to death, and that the court's reference to proximate cause was error. However, the improper submission of an issue of fact to a jury constitutes reversible error only where prejudice results to the complaining party. Parton v. Weilnau, 169 Ohio St. 145, 158 N.E.2d 719 (1959); Reeg v. Hodgson, 1 Ohio App.2d 272, 202 N.E.2d 310 (1964); 5A C.J.S. Appeal and Error § 1759 (1958).

■ When considered in the light of the entire charge, the reference to proximate cause, although unnecessary, could not have misled the jury. It was undisputed that the injuries, if any, sustained prior to impact were caused by the inflight occurrence. Under these circumstances, we regard any error in the charge as harmless. Certainly, such error was not prejudicially erroneous.

■ Plaintiff also maintains that the district court erred in directing a verdict for defendants on the claim for punitive damages in the survival action. We are of the view that the district judge correctly concluded the evidence was insufficient to justify an award for punitive damages against either defendant under Ohio law. See Kellerman v. J. S. Durig Co., 176 Ohio St. 320, 199 N. E.2d 562 (1964); Universal Concrete Pipe Co. v. Bassett, 130 Ohio St. 567, 200 N.E. 843 (1936). Moreover, exemplary or punitive damages may not be awarded in the absence of proof of actual damages. Richard v. Hunter, 151 Ohio St. 185, 85 N.E.2d 109 (1949). Since the verdict for defendants in the survival action necessarily included a finding that plaintiff suffered no compensable injury, any error in the court's treatment of the punitive damage claim is also harmless.

We find no merit in the other grounds of error argued by plaintiff-appellant.

The judgment is affirmed.