**Vernon ADKINS, Plaintiff-Appellee,**

v.

**FORD MOTOR COMPANY, Defendant-Appellant.**

**No. 71–1020.**

United States Court of Appeals,
Sixth Circuit.

July 27, 1971.

---

Louis C. Woolf, Knoxville, Tenn., for defendant-appellant; McCampbell, Young, Bartlett & Woolf, Knoxville, Tenn., of counsel.

Hiram G. Tipton, Knoxville, Tenn., for plaintiff-appellee; Poore, Cox, Baker, McAuley, Ray & Byrne, Knoxville, Tenn., of counsel.

Before WEICK and BROOKS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

WEICK, Circuit Judge.

In this appeal defendant, Ford Motor Company, seeks to overturn a judgment entered on a jury verdict in favor of plaintiff Adkins, in the amount of $7,500, for property damage to his truck and for loss of its use, the truck having been badly damaged in an accident allegedly caused by a defect in its manufacture by defendant. The defendant's contentions are all related to the weight and sufficiency of the evidence.

Plaintiff owns and operates a trucking business, and is primarily engaged in the hauling of coal. He has used Ford trucks for many years. In March, 1967, plaintiff traded with East Tennessee Motors Company, a Ford dealer, turning in two old trucks on two new Ford trucks, one of which is the truck in question. Plaintiff used trucks with both a main and an auxiliary transmission, which operated to retard the speed of the trucks when

coming down from the mountain where they were loaded with coal.

Ford trucks previously purchased by plaintiff had been equipped with synchronized main and auxiliary transmissions manufactured by Spicer, which had operated satisfactorily. The two trucks purchased by plaintiff in 1967 were equipped with Fuller non-synchronized main and auxiliary transmissions. When plaintiff asked the dealer about the change to Fuller transmissions, he was told that Spicer transmissions were not available because Spicer had "labor problems," so Fuller transmissions had to be accepted by him in order to obtain the trucks. There is no evidence in the record, however, to indicate that plaintiff ever received any assurance that Fuller transmissions would function as well as Spicer transmissions.

The transmissions in the new trucks began to malfunction almost immediately upon delivery of the trucks, unexpectedly jumping out of gear when the driver took his foot off the gas pedal to slow down. One truck experienced such difficulty on the day of delivery of the truck. The truck in question first had such a malfunction about three to four weeks after delivery to plaintiff.

Plaintiff attempted on several occasions to have the condition corrected. In July, 1967, the trucks were returned to East Tennessee Motors, where the transmissions were "pulled", checked, and reinstalled. Malfunctions continued, and the trucks were again taken to East Tennessee Motors in December, 1967, where a representative of Fuller tore down, inspected and repaired the transmissions. The repairs did not correct the condition, so plaintiff complained by telephone directly to Mr. McDonald, the division head of Ford Motor Company, in Louisville, Kentucky. Mr. Ray, of the division office, was also involved in this conversation. Plaintiff informed McDonald and Ray of the malfunction; he told them the kind of trucks he had purchased and the loads they normally carried. The Ford representatives told plaintiff that he had a "good truck," and said that they

had offered to pay East Tennessee Motors one-half of the cost of replacing the Fuller transmissions with Spicer transmissions, in the interest of customer good will, but that East Tennessee Motors had declined to pay the other half. Plaintiff again took the trucks to East Tennessee Motors for repair in February, 1968.

Between five days and a week after the last "repair," on February 21, 1968, plaintiff's son, a regular and experienced driver, was driving the truck in question, fully loaded, down a mountain, when the transmission disengaged. Normally when the truck jumped out of gear the driver could get it back in gear without stopping, but occasionally it was necessary to stop in order to engage the transmissions again. On this occasion, plaintiff's son was unable to re-engage the transmissions while the truck was moving. When he applied the brakes, however, the air line to the brakes failed and he had to jump from the truck. The truck went over the side of the mountain, down an embankment, and crashed into some trees, causing major damage to the truck.

Plaintiff instituted this action, founded upon diversity of citizenship jurisdiction, seeking to recover for the damage to his truck and for the loss of its use which he suffered while the truck was not in service. He essentially founded his action on the two theories of recovery embodied in sections 402A and 402B of the Restatement of Torts, Second, *i.e.*, strict liability in tort, and misrepresentation of a material fact concerning quality or fitness. Both theories are recognized in Tennessee. Ford Motor Co. v. Lonon, 217 Tenn. 400, 398 S.W.2d 240 (1966).

The case was tried before a jury, and the parties agree that the legal principles enunciated by the Court in its instructions were correct. It is the defendant's contention, however, that the case should not have been submitted to the jury. Defendant argues that there is no evidence of misrepresentation; that there is insufficient evidence of defect in manufacture and proximate causation; and that

the evidence established that plaintiff and his son assumed the risk. It contends that the Court erred in denying its motion for a directed verdict.

We agree that there is insufficient evidence of misrepresentation to warrant submission of that issue to the jury. The only evidence tendered to support this count is the bald assertion of plaintiff that he was furnished materials by Ford, consisting of pamphlets and advertisements, concerning the trucks, plaintiff's testimony that he had a prolonged course of dealing with defendant's products, and plaintiff's testimony that he had inquired of East Tennessee Motors concerning the change from Spicer to Fuller transmissions, although there is no evidence that he received any assurance that the Fuller transmissions would perform as well as Spicer transmissions. We believe that at the least, Tennessee law requires reliance on a particular and specific statement concerning quality or fitness as the foundation for an action of misrepresentation under Section 402B. Ford Motor Co. v. Lonon, *supra;* Restatement of Torts, Second, § 402B, Comment g. General assurances of good quality and sales talk are not enough. Since there was no evidence of any assurance of quality in any particularity, misrepresentation was not established, and defendant was entitled to have a verdict directed in its favor on that issue.

Defendant contends that since the issue of misrepresentation was improperly submitted to the jury, the general verdict returned by the jury is irreparably tainted, even though the remaining issues may have been submitted free from error. Where jurisdiction is founded upon diversity of citizenship and state-created rights are sought to be enforced, this Court has consistently construed a general verdict as the state courts would. Ollier v. Lake Central Airlines, 423 F.2d 554 (6th Cir. 1970) (Ohio law); Tracy v. Finn Equip. Co., 290 F.2d 498 (6th Cir. 1961) (Tenn. law).

Tennessee adheres to the rule that where more than one theory of recovery is submitted to the jury, and there is evidence to support one or more, but not all, of the theories, a general verdict should be construed to be attributable to the theory or theories supported by sufficient evidence and submitted free from error. Tracy v. Finn Equip. Co., *supra;* Atlantic Coastline R.R. v. Smith, 264 F. 2d 428 (6th Cir. 1959); Louisville & Nashville R.R. v. Rochelle, 252 F.2d 730 (6th Cir. 1958); Tennessee Cent. Ry. v. Umenstetter, 155 Tenn. 235, 291 S.W. 452 (1927); Osborne v. Frazor, 58 Tenn. App. 15, 425 S.W.2d 768 (1968); Clinchfield R.R. v. Forbes, 57 Tenn.App. 174, 417 S.W.2d 210 (1966). *Cf.* Holder v. Martin, 219 Tenn. 165, 407 S.W.2d 461 (1966) (erroneous instructions); Wilson v. Tranbarger, 218 Tenn. 208, 402 S.W. 2d 449 (1965) (erroneous instructions).

In the present case there is apparent agreement between the parties that the Court's instructions to the jury were correct. In any event, the defendant cannot now complain about the instructions since it made no objections thereto when given the opportunity by the Court. Under applicable Tennessee law, therefore, the general verdict in this case must stand if it is supported by sufficient evidence on plaintiff's strict liability in tort count for defect in manufacture.

Defendant urges that plaintiff has failed to introduce sufficient evidence of the specific defect in manufacture and proximate causation, and that assumption of risk has been established as a matter of law. We think the evidence of defect in manufacture and proximate cause is overwhelmingly against the defendant. There is evidence that the transmissions began malfunctioning on the day of delivery of one truck, and several weeks later on the other truck, which malfunction continued until the time of the accident. There is also opinion-evidence of the dealer that Fuller transmissions were inadequate for the type of trucks used by plaintiff. Even Ford's

own expert witness, one of its employees, in answer to a hypothetical question conceded that if the malfunction in the transmission occurred on a new truck, it could be assumed that there was a defect therein. Under these circumstances, the plaintiff need not, as suggested by defendant, point to a specific explanation of the defect, since the transmission was clearly unfit for its intended use at the time of delivery of the truck.

■ Nor is there any lack of evidence to support the jury's conclusion that the defect proximately caused the accident. If the transmissions had not been disengaged, there would have been no need to use the brake. Furthermore, one of the functions of the transmissions was to avoid use of the brakes in order to reduce brake wear, and thus to eliminate eventual brake failure. The jury could properly find that the defective transmissions began the causative chain which resulted in the damage to the truck.

■ Finally, while the defendant supports with some persuasive evidence in the record, its argument that plaintiff and his son assumed the risk, the issue was properly left to the jury's determination. Defendant fails to distinguish between the case where a person, knowing of a defective condition, continues to use the product without bringing it to the attention of the seller for repair, and that case where a person, knowing of a defective condition, attempts to have the defect repaired. In the latter case, such as is presented here, the very least which defendant must show to support assumption of risk is that the plaintiff knew the existence of a dangerous condition after the last repair, which preceded the accident by only a few days. While there is some evidence on that question, it is equivocal and could be understood by the jury to establish either knowledge or lack of knowledge after the last repair. In the absence of clearer proof, the District Court properly let the jury decide whether plaintiff assumed the risk, especially where the burden of proof rested with the defendant.

Since we have concluded that the strict liability in tort count founded on Section 402A of Restatement of Torts, Second, was submitted to the jury free from error, the judgment of the District Court is affirmed.