**VELSICOL CHEMICAL CORP. et al., Appellants,**

v.

**Mr. and Mrs. Leonard ROWE et al., Appellees,**

v.

**CHATTANOOGA COKE & CHEMICALS CO. et al., Appellees.**

Supreme Court of Tennessee.

Oct. 25, 1976.

James W. Gentry, Jr., Gentry & Boehm, Chattanooga, for appellants.

Phillip A. Fleissner, W. K. Snouffer, Jr., Chambliss, Bahner, Crutchfield, Gaston & Irvine, Chattanooga, for appellees Rowe and others.

Spears, Moore, Rebman & Williams, Humphreys, Hutcheson & Moseley, Morgan, Garner & Wood, Chattanooga, for appellees Chattanooga Coke & Chemicals Co. and others.

## OPINION

BROCK, Justice.

### I

The original plaintiffs, residents and homeowners of the Alton Park area of Chattanooga, sued Velsicol Chemical Corporation for damages allegedly caused them by pollutants emitted by Velsicol from its chemical manufacturing plant in Alton Park. It is alleged in the complaint that Velsicol's emissions contaminated the air and water in the Alton Park area and constituted a nuisance, and also that Velsicol had been guilty of trespass in depositing identifiable quantities of chemicals and other pollutants upon plaintiffs' properties. Plaintiffs also alleged that Velsicol had been guilty of intentional disregard of the law and of court injunctions in continuing the alleged nuisance, thus entitling plaintiffs to awards for punitive damages.

After filing an answer generally denying the plaintiffs' allegations, Velsicol filed a third-party complaint against five third-party defendants, alleging that each of them operated a plant in the Alton Park area, that during the period alleged in the original complaint each of them emitted pollutants of the air and water, and that by reason of these facts the third-party defendants are liable to Velsicol for "whatever amount of recovery is made by said plaintiffs."

The five third-party defendants filed motions to dismiss the third-party complaint which were sustained by the trial court upon the grounds that the third-party complaint (1) failed to state a claim against the third-party defendants upon which relief could be granted because the third-party plaintiff and third-party defendants were not "joint tortfeasors" and, thus, the third-party plaintiff was not entitled to contribution or indemnity from third-party defendants and (2) the third-party complaint was not permissible under Rule 14.01 of the Tennessee Rules of Civil Procedure. Velsicol, the third-party plaintiff, appeals from the order of dismissal.

### II

Rule 14.01 of the Tennessee Rules of Civil Procedure provides, in relevant part, as follows:

"At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."

The Committee Comment to Rule 14 observes that:

"Rule 14 allows a defendant to bring in, as a third-party defendant, any new party who is or may be liable to defendant for all or part of the plaintiff's claim against the defendant . . . thus mak[ing] it possible for ultimate liability to be determined in a single suit where there are several parties whose rights and liabilities are interconnected."

The language of Rule 14 is identical to the federal impleader rule. See Rule 14, Federal Rules of Civil Procedure. Federal decisions construing this language clearly hold that if there is a substantive right to indemnity or contribution among joint tortfeasors under applicable state law, the procedure for its enforcement is provided by Rule 14. 3 Moore's Federal Practice, par. 14.11, at 14–319 (3d ed. 1974). See, e. g., *Rouley v. State Farm Mut. Auto. Ins. Co.*, 235 F.Supp. 786 (W.D.La.1964); *Bosin v. Minneapolis, St. Paul & Sault Ste. Marie R. Co.*, 183 F.Supp. 820 (E.D.Wis.1960), aff'd 297 F.2d 583 (7th Cir. 1961).

We hold that Rule 14.01, Tennessee Rules of Civil Procedure, does authorize a third-party complaint based upon a claim of one tortfeasor for indemnity or contribution from other alleged "joint tortfeasors."

### III

The third-party complaint, if liberally construed, may be considered to allege a claim based upon theories of indemnity or contribution. Although these terms are often used interchangeably in many court decisions, there is, of course, a distinct and

substantial difference between them. Contribution distributes the loss among the tortfeasors by requiring each to pay his proportionate share. Indemnity shifts the entire burden from one tortfeasor, who has been compelled to pay it, to the shoulders of another who should ultimately bear the loss instead.

Indemnity generally arises from an express or implied contract. The right to indemnity may, however, arise in the absence of an agreement and by operation of law to prevent an unjust result. This may be due to the relation of the parties to one another and the consequent duty owed, e. g., master and servant, or it may be because of a significant difference in the kind or quality of their conduct, e. g., "active negligence" and "passive negligence" or mere failure to remedy or discover the negligence. It is our opinion that the third-party plaintiff has not alleged facts sufficient to give rise to a possible right of indemnity against the third-party defendants.

## IV

■ Does the third-party complaint allege a right to contribution from the third-party defendants? Essentially, it alleges that they, too, polluted the air and water, thus contributing to the damages, if any, suffered by plaintiffs.

The common law rule was that there could be no contribution between those who were regarded as "joint tortfeasors," when one had discharged the claim of the injured plaintiff. *Rhea v. White,* 40 Tenn. 121 (1859); *Cohen v. Noel,* 165 Tenn. 600, 56 S.W.2d 744 (1933); Prosser, *supra,* § 50 and n. 38. The rule was originally adopted by the English courts in *Merryweather v. Nixon,* 101 Eng.Rep. (K.B.1799). Apparently, the basis of the rule was the unwillingness of the court to allow anyone to found a cause of action upon his own *deliberate* wrong, an aspect of the "unclean hands" doctrine. When, in the United States, the codes of civil procedure permitted joinder of defendants who were merely negligent, such defendants came to be called "joint tortfeasors," and the reason for the rule

against contribution was lost to sight. The great majority of American jurisdictions applied the rule of no-contribution to all situations, even those in which independent, but concurrent, acts of negligence had contributed to a single resulting injury. A small minority of states—including Tennessee—eventually came to a contrary conclusion, allowing contribution among joint tortfeasors without the aid of legislation. *Davis v. Broad St. Garage,* 191 Tenn. 320, 232 S.W.2d 355 (1950); *Huggins v. Graves,* 210 F.Supp. 98 (E.D.Tenn.1962), aff'd, 337 F.2d 486 (6th Cir. 1964); Prosser, *supra,* § 50; Restatement (Second) of Torts, Explanatory Notes § 886A, comment *a* at 195 (Tent. Draft No. 16, 1970).

The earliest Tennessee case on the question of contribution between joint tortfeasors is *Rhea v. White, supra,* wherein the Court denied contribution, indicating that if the plaintiff had not been an *intentional* tortfeasor he might have recovered. The same year, however, *Anderson v. Saylors,* 40 Tenn. 551 (1859), seemingly laid down a general rule against either contribution or indemnity among all joint tortfeasors.

Ever since the original rule was introduced, however, attempts have been made to carve out exceptions to it or to otherwise limit its prohibition. The first real breach of the strict rule in Tennessee occurred in *Central Bank and Trust Co. v. Cohn,* 150 Tenn. 375, 264 S.W. 641 (1924), involving the unintentional conversion of a note; the plaintiff seeking contribution from his fellow converters. This case clearly rejected the rule of no contribution among joint tortfeasors. Later cases further rejected the no-contribution rule. As noted by the late Chief Justice Burnett in *Davis v. Broad St. Garage, supra,* 232 S.W.2d at 357:

"Our cases make a clear distinction between wilful and intended wrongs in which the general rule of noncontribution is recognized and wrongs resulting from purely negligent acts, mistakes or other unintentional breaches of the law in which contribution is allowed."

In *Huggins v. Graves, supra,* the federal district judge concluded that:

". . . the right of contribution exists under Tennessee law as between joint tortfeasors in a negligence action in the absence of willful or wanton negligence upon the part of the party seeking contribution. Moreover, this result accords with reason and, as stated by the Tennessee Supreme Court in the *Davis* case, *supra*, 'justice, right, and equity demand this conclusion.'" 210 F.Supp. at 103.

Any remaining uncertainty regarding the extent of the right of contribution among joint tortfeasors in Tennessee was dispelled by the 1968 enactment of the Tennessee Uniform Contribution Among Tortfeasors Act.[1] T.C.A. §§ 23–3101—23–3105 (Supp. 1975). Excluding intentional tortfeasors, the Tennessee Uniform Act provides that the right to contribution arises upon the satisfaction of two general conditions. First, there must be "two (2) or more persons . . . jointly or severally liable in tort for the same injury to person or property . . . ." T.C.A. § 23–3102(a). Secondly, one of those jointly or severally liable must have paid more than his pro rata share of the common liability. T.C.A. § 23–3102(b).

Obviously, the meaning of the phrase "jointly or severally liable" is of primary importance in determining the right of contribution under our law.

An early Tennessee case, *Swain v. Tennessee Copper Co.*, 111 Tenn. 430, 78 S.W. 93 (1903), stated that the test of joint liability is "whether each of the parties is liable for the entire injury done." It would appear that the Court was begging the question:

"If they [the defendants] are joint tort feasors, each one is responsible for the damage resulting from the acts of all the wrongdoers, and they may all be sued severally or jointly; but, if they are not joint tort feasors, each is liable only for the injury contributed by him, and can only be sued in a separate action therefor." Id. 78 S.W. at 94.

The factual situation presented in the *Swain* case was markedly similar to that in the instant case. The plaintiff-landowners brought suit against two neighboring copper smelting plants, alleging that the noxious fumes emitted from their respective hearths became "indistinguishably mingled," creating "a great nuisance." The Court, however, refused to acknowledge that the harm done to the plaintiffs' land was indivisible.[2] Rather, the Court said:

"Proof of the extent and capacity of the several plants causing the damages complained of, the tonnage of ores treated by each of them, the time each has been in operation, their comparative proximity or distance from the plaintiff's lands, the usual condition of the air currents in that locality, and many other facts and circumstances, will show with substantial

1. The 1939 Uniform Contribution Among Tortfeasors Act was phrased in terms of "joint tortfeasor," stating that:

"For purposes of this act the term 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Uniform Contribution Among Tortfeasors Act § 1 (1939).

This definition and the term "joint tortfeasors" were withdrawn from the revised Uniform Contribution Among Tortfeasors Act of 1955 which was the basis for the Tennessee Uniform Act. The reason for the omission was stated by the Commissioners:

"There are *still a few jurisdictions* in which those who act independently and not in concert, as for example two colliding automobile drivers, cannot always be joined as defendants in the same action. In those jurisdictions the tendency is to use the term 'joint tortfeasor' to refer only to those who can be joined. The term is not indispensable to the Act and the change in meaning might perhaps be confusing in those states." Uniform Contribution Among Tortfeasors Act § 1, note 3 (1955).

2. The Court specifically declined to rule on the question of indivisible harm, but referred, in passing, to a case which held that:

". . . in the absence of all proof, it may be presumed that the several tort feasors contributed equally to the damages inflicted, the effect of which would be to throw upon the defendant tort feasor the burden of showing that others contributed to the injury, and the extent of such contribution." *Swain, supra*, at 99.

certainty the extent of the injury inflicted by each of the defendants . . . ." Id. at 99.

Apparently, the Court was not troubled by the fact that it would be extremely difficult, if not impossible, for the plaintiff to apportion his damages among the defendants. The rationale of the *Swain* decision is shown by the following:

"' . . . [i]f it were otherwise . . one defendant, however little he might have contributed to the injury, would be liable for all the damages caused by the wrongful acts of all the other defendants, and he would have no remedy against the latter, *because no contribution could be enforced by the tort feasors.*'" Id. at 97, quoting *Miller v. Highland Ditch Co.*, 87 Cal. 430, 25 P. 550 (1891). [Emphasis added.]

Such was the state of our law regarding contribution among tortfeasors at the time *Swain* was decided. Since that time, however, as above indicated, we have developed not only a common law right of contribution among tortfeasors but the legislature has passed a uniform act specifically granting such a right. Thus, the no-contribution rationale of the *Swain* case has collapsed, so that, we look elsewhere for the import of the phrase "jointly or severally liable."

In *Waller v. Skeleton*, 31 Tenn.App. 103, 212 S.W.2d 690, cert. denied, 186 Tenn. 433, 211 S.W.2d 445 (1948), it was no defense for a defendant, who drove over the crest of a hill on the wrong side of the road in the face of congested oncoming traffic and collided with the oncoming car in which plaintiff was riding, that a motorist who was driving behind plaintiff's car negligently collided with plaintiff's car, contributing to the plaintiff's injuries. Since the following motorist's negligence was concurrent with the defendant's negligence, the Court reasoned, each would be jointly and severally liable for all of plaintiff's injury.

Relying upon various legal authorities, the Court said:

"A defendant's negligent act, in order to be the proximate or legal cause of plaintiff's injuries, need not have been the

whole cause or the only factor in bringing them about. It was enough if such act was a substantial factor in causing them." *Waller v. Skeleton, supra,* 212 S.W.2d at 696, citing Restatement of Torts §§ 431, 433, 435; 1 Street, Foundations of Legal Liability, 109–123; *Jackson v. B. Lowenstein & Bros. Inc.,* 175 Tenn. 535, 136 S.W.2d 495.

The Court continued:

"Where there were two causes which proximately contributed to plaintiff's injuries, for only one of which defendant was responsible, and with the other of which neither he nor the plaintiff was chargeable, defendant is liable for all of such injuries to the same extent as if they had been caused by his negligence alone." *Waller v. Skeleton, supra,* 212 S.W.2d at 696.

While not relying on the "single, indivisible injury" theory, discussed *infra*, the Court did decide that where successive impacts with different negligently operated vehicles contributed to or combined to cause the aggregate harm suffered, the plaintiff is entitled to a joint and several recovery against both tortfeasors. This principle was again recognized in *Yellow Cab Co. v. Pewitt,* 44 Tenn.App. 572, 316 S.W.2d 17 (1958), wherein the Court decided that one of two alleged joint tortfeasors could not complain of dismissal of the case against the other since each was jointly and severally liable.

*Holder v. Martin,* 219 Tenn. 165, 407 S.W.2d 461 (1966), however, presents facts relevant to the question of divisibility of harm from separate and distinct sources. There, the defendants were involved in two separate and distinct automobile accidents with plaintiff's decedent. After the first accident, in which the decedent sustained severe injuries, decedent had been placed in the ambulance of the second defendant. En route to a hospital, a second collision occurred. The evidence was "hotly disputed" as to whether the victim died prior to the second accident. The Court refused to hold that the defendants were joint tortfeasors since there were two separate and

distinct accidents at different times and places.

It has been suggested that joint torts be divided into four basic categories, viz., (1) the actors knowingly join in the performance of the tortious act or acts; (2) the actors fail to perform a common duty owed to the plaintiff; (3) there is a special relationship between the parties (e. g., master and servant or joint entrepreneurs); and (4) although there is no concert of action, nevertheless, the independent acts of several actors concur to produce indivisible harmful consequences. 1 Harper & James, Law of Torts, § 10.1 (1956). While acknowledging that the last category, which may be termed independent, concurring torts,[3] may not fall within the traditional definition of "joint torts," the authors note an increasing tendency in judicial decisions and among legal commentators to impose joint and several liability for such wrongs and thus to establish such torts as "joint" in their practical or legal effect. See Schoenly v. Nashville Speedways, Inc., 208 Tenn. 107, 344 S.W.2d 349 (1961); Waller v. Skeleton, supra; Landers v. East Texas Salt Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731 (1952); Phillips Petroleum Co. v. Hardee, 189 F.2d 205 (5th Cir. 1951); Jackson, "Joint Torts & Several Liability," 17 Tex.L. Rev. 399 (1939); Prosser, "Joint Torts & Several Liability," 25 Calif.L.Rev. 413 (1937); Wigmore, "Joint-Tortfeasors & Severance of Damages: Making the Innocent Party Suffer Without Redress," 17 Ill.L. Rev. 458 (1923).

The primary concern in dealing with independent, concurring torts is the proper extent of the liability of such wrongdoers, i. e., when should tortfeasors who do not act in concert, but whose acts combine to produce injury to the plaintiff, be held individually liable for the entire damage?

It has been suggested that the proper approach should be to look to the *combined effect* of the several acts:

"If the acts result in separate and distinct injuries, then each wrongdoer is liable only for the damage caused by his acts. However, if the combined result is a single and indivisible injury, the liability should be entire. Thus the distinction to be made is between injuries which are divisible and those which are indivisible." Jackson, "Joint Torts & Several Liability," *supra,* at 406.

The requirement of "indivisibility" can mean either that the harm is not even theoretically divisible, as death or total destruction of a building, or that the harm, while theoretically divisible, is single in a practical sense in that the plaintiff is not able to apportion it among the wrongdoers with reasonable certainty, as where a stream is polluted as the result of refuse from several factories.

In *Landers v. East Texas Salt Water Disposal Co., supra,* the plaintiff sued the defendant salt water disposal company and an oil company jointly and severally for the damage resulting when they independently deposited salt water in his lake. The court, apparently assuming that neither defendant acting alone would have caused the entire damage, extended the liability of such wrongdoers by holding them, in effect, to be jointly and severally liable, with the reservation that any one defendant could reduce his liability by showing the amount of damage caused by his acts only, or the amount that was caused by other defendants. The Texas court said:

"Where the tortious acts of two or more wrongdoers join to produce an indivisible injury, that is, an injury which cannot be apportioned with reasonable certainty to

---

**3.** The term "concurrent wrongdoers" has been defined:

"Concurrent, as distinguished from joint negligence arises where the injury is proximately caused by the concurrent wrongful acts or omissions of two or more persons acting independently. That the negligence of another person than the defendant contributes, concurs or cooperates to produce the injury is of no consequence. Both are ordinarily liable. And unless the damage caused by each is clearly separable, permitting the distinct assignment of responsibility to each, each is liable for the entire damage." 1 Shearman & Redfield, Negligence, § 122 (6th ed. 1913).

the individual wrongdoers, all of the wrongdoers will be held jointly and severally liable for the entire damages and the injured party may proceed to judgment against any one separately or against all in one suit." 151 Tex. 251 at 256, 248 S.W.2d at 734.

More recently, in *Michie v. Great Lakes Steel Division, National Steel Corp.*, 495 F.2d 213 (6th Cir. 1974), residents of La-Salle, Ontario, brought a nuisance action in federal court, claiming that air pollutants from defendants' manufacturing plants across the Detroit River caused diminution of the value of their property, impairment of their health, and interference with the use and enjoyment of their land. Each plaintiff claimed at least $11,000 joint damage against these defendants, charging that the defendants were jointly and severally liable.

Relying upon Michigan automobile cases involving successive collisions, the Court reasoned that in any claim for relief there was a manifest unfairness in "putting on the injured party the impossible burden of proving the specific shares of harm done by each [defendant]," quoting *Landers v. East Texas Salt Water Disposal Co., supra*. The Court concluded that the Michigan Supreme Court would extend the principle of the automobile collision cases to the *Michie* facts and held that joint and several liability is applicable in nuisance actions.

It is our conclusion that the rule stated and applied in the *Landers* and *Michie* cases is more consonant with modern legal thought and pragmatic concepts of justice than that applied by this Court three quarters of a century ago in *Swain, supra*. Accordingly, we depart from *Swain* in this respect and adopt the rule of *Landers* and *Michie* for determining joint and several liability when an indivisible injury has been caused by the concurrent, but independent, wrongful acts or omissions of two or more wrongdoers, whether the case be one of negligence or nuisance.[4] We hold that the third-party complaint may stand as a claim for contribution by one tortfeasor from other alleged joint tortfeasors.

## V

■ The remaining question is whether impleader of third party defendants should be allowed prior to the payment by the original defendant of more than his pro rata share of the common liability. See T.C.A. § 23–3102(b).

The federal courts have consistently held that the "may be liable" language of Rule 14 may accelerate a right of contribution among joint tortfeasors even though such a right is "inchoate, unascertainable and contingent until [the joint tortfeasor] pays more than his proportionate share of the common liability." 3 Moore's Federal Practice, par. 14.08, at 14–245 (3d ed. 1974). See, e. g., *Bosin v. Minneapolis, St. Paul & Sault Ste. Marie R. Co., supra; Vaughn v. Terminal Transport Co., Inc.*, 162 F.Supp. 647 (E.D.Tenn.1957). There must, of course, be some showing that under the applicable state law, the third party *may* be liable to defendant. 3 Moore's Federal Practice, par. 14.10, at 14–284; *Ray v. Compania Naviera Continental*, 25 F.R.D. 211 (D.Md.1960); *Handley v. Tecon Corp.*, 172 F.Supp. 565 (N.D.N.Y.1959). The allegations of the third-party complaint need not show that recovery is a certainty; the complaint should be allowed to stand if, under some reasonable construction of the facts which might be advanced at trial, recovery would be possible. 3 Moore's Federal Practice, par. 14.10, at 14–285.

Thus, in *Huggins v. Graves, supra*, the federal district court approved the acceleration of Tennessee's substantive right of contribution, quoting with approval from Moore's Federal Practice:

" 'The fact that contribution may not actually be obtained until the original defendant has been cast in judgment and has paid does not prevent impleader; the impleader judgment may be so fashioned as to protect the rights of the other tort-

---

4. Of course, this right is subject to the exceptions stated in T.C.A. § 23–3102, e. g. one who intentionally causes or contributes to an injury has no right of contribution.

feasors, so that defendant's judgment over against them may not be enforced until the defendant has paid plaintiff's judgment or more than his proportionate share, whichever the law may require.'" *Huggins v. Graves, supra,* at 104, quoting 3 Moore's Federal Practice, par. 14.11, at 14–322—14–323.

We hold this to be the proper rule and that the third-party complaint is not premature.

The judgment of the trial court dismissing the third-party complaint is reversed and the cause remanded for further proceedings. Costs incurred upon this appeal are taxed against the third-party defendants.

FONES, HENRY and HARBISON, JJ., and HYDER, Special Judge, concur.